**CHORAK et al. v. RKO RADIO PICTURES, Inc. et al.**

No. 13041.

United States Court of Appeals Ninth Circuit.

April 24, 1952.

Rehearing Denied June 4, 1952.

———◆———

Alfred C. Ackerson, Los Angeles, Cal., for appellants.

Eugene D. Williams, W. B. Carman, Jr., Los Angeles, Cal. (Freston & Files, Los Angeles, Cal., of counsel), for appellees.

Before MATHEWS, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

This appeal presents a phase of the persistent controversy over what constitutes a fair and legitimate distribution of motion picture films to exhibitors in any given area. Precedence in the matter of "runs" and "clearances" in the exhibition of any picture in such an area gives it a favored position and thus affords a competitive advantage with the natural result that conflicting claims of exhibitors in the area for such a preferential position in this highly competitive field inevitably produces problems calling for a fair and rational adjustment of such claims between distributor-producers and exhibitors. These conflicts of economic interest have led to much litigation and frequent resort to arbitration in an effort to achieve a maximum of fairness in the light of all local conditions. The facts in this case reveal the presence of just such a problem.

In this action the ten corporate appellee producer-distributors above named (along with two other producer-distributors who were dismissed from the action after close of the evidence) were joined as defendants along with three above named appellee exhibitors owning and/or operating motion picture theatres located in an area of Los Angeles County in Southern California lying to the east of Los Angeles, this area (claimed by appellants to be the "competi-tive area") embracing urban communities, villages and open countryside. On argument here counsel for the contending parties readily agreed that the substantial and controlling issue in this case narrows down to a controversy over the question of "clearances" of pictures in this local area as between a theatre owned by appellants and those owned and/or operated by the three exhibitor-appellees under distribution arrangements and procedures employed by the various appellee producer-distributors named above.

The action was laid under Title 15 of U.S.C.A. §§ 1, 2 and 7 and the Clayton Act, Secs. 4 and 16, 15 U.S.C.A. §§ 15 and 26, and appellants' complaint charged appellees with the violation of these statutes in the distribution and exhibition of motion pictures in the noted area where appellants' "Puente Theatre" is located. The ten distributor-defendants are engaged in the distribution of motion picture film in interstate commerce throughout the United States and generally engage in business practices necessary to the conduct of such interstate activities.

Practices obtaining in the motion picture business are set forth at length and with great particularity in the complaint. Appellee producer-distributors are charged therein with being members of a conspiracy having for its purpose the exclusion of the Puente Theatre as a first-run picture house in the so-called competitive area. Appellee exhibitors are charged with being participants in this conspiracy.

The complaint charges that commencing in or about the year 1947 and continuing to the day of filing of appellants' complaint, all defendants unlawfully and knowingly engaged in a combination and conspiracy to restrain and monopolize interstate and foreign trade and commerce in the distribution and exhibition of motion picture films within the claimed "competitive area" located in the San Gabriel Valley in Los Angeles County, California, this area including the towns and populated areas known as El Monte, Five-Points, Baldwin Park, Monterey Park, Covena, Rosemede, Montebello and Puente, together with the less heavily

227

populated rural areas surrounding each of said city and towns.

The acts of defendants by which the plaintiffs claim to have been injured in their business may be summarized as follows: (1) During the period here involved the exhibition of motion pictures in the said competitive area has been based upon a clearance schedule of 14 days after the Pasadena closing date and this clearance applied to and governed the exhibition of feature pictures in all theatres in the competitive area until the opening of plaintiffs' Puente Theatre at Puente, and as a part of the conspiracy and by virtue of the same, the Puente Theatre was given a minimum clearance of not less than approximately 14 days after the El Monte closing date, or 28 days after the Pasadena closing date. (2) That in effect and practice this schedule withheld feature pictures from the Puente Theatre until a minimum of 14 days had elapsed after their showing in each and every other motion picture theatre in the competitive area. (3) That since the opening of plaintiffs' Puente Theatre on February 20, 1948 this arbitrary, collusive and discriminatory withholding of feature pictures to the Puente Theatre has been increased and extended to in excess of 30 days in most instances after their showing in the city of El Monte and elsewhere in the competitive area. (4) That by reason of the conspiracy and as a part thereof the three exhibitor defendants have operated under a "split showing" arrangement [1] with the distributor defendants whereby Edwards Theatre Circuit, Inc. and James Edwards, Jr. have been and were given the exclusive right to exhibit feature pictures on first run in the city of El Monte produced or distributed by defendants, Columbia, RKO, Monogram and Republic; that defendant Arthur L. Sanborn has been given and now enjoys the exclusive right to exhibit on first run in the city of El Monte all feature pictures distributed by or through Warners, Loew's, Fox, Paramount and Universal; that in addition to the foregoing split showing arrangement, defendants Edwards Theatre Circuit, Inc. and James Edwards, Jr. are permitted, as a part of the said conspiracy, to exercise and enjoy a "move over" [2] privilege on most feature pictures which it derives as a result of its split showing arrangement and agreement between said defendants' El Valley Theatre in the city of El Monte and its Tumbleweed Theatre situated on the outskirts of the city of El Monte, in a locality commonly known as Five Points, California. That under this conspiracy the defendants have prolonged the arbitrary and collusive clearance of approximately 14 days after the El Monte closing date by moving over feature pictures produced and distributed by Columbia, RKO, Monogram and Republic to the Tumbleweed Theatre at Five Points after their showing in the El Valley Theatre in El Monte thereby extending the Puente clearance an additional 7 days with the result that this move over delayed the availability for exhibition at the Puente Theatre. (5) That the exhibitor defendants, by reason of their ownership of multiple theatres within the competitive area and elsewhere and their association and affiliation with other large theatre chain organizations have enjoyed a mass purchasing power in the purchase and rental of feature films exhibited within the competitive area. (6) That from the opening of plaintiffs' Puente Theatre and for months prior thereto, plaintiffs have

[1]. Appellants define "split showing" as meaning the dividing of feature pictures between otherwise competing theatres in a given area by allocating to one or more theatres under common ownership the control of the entire production of certain designated producers of said features, and by allocating to one or more competing theatres in said area the entire production of the remaining producers of said feature pictures, for the purpose and with the effect of eliminating competition between said producers and competition between said theatres and other theatres in the distribution and exhibition of all, or substantially all, of said features in any one competitive area.

[2]. A "move over" is the continued exhibition of a motion picture in the same area at a different theatre to which it is moved from its first run in the area, without any lapse of time between showings. Although it is not called a "run" in trade terminology, it is in effect the second run of the picture in the area, without the imposition of a clearance period.

repeatedly sought from distributor defendants the privilege of licensing pictures distributed by them on a comparable basis with their competitors in the area mentioned and have been ready, willing and able to pay film rentals for such runs comparable to rentals paid to defendant distributors by all other theatres in the competitive area, but solely by reason of the collusive conspiracy and agreement alleged the distributor defendants have failed and refused to so license plaintiffs' Puente Theatre except on a long-delayed subsequent run after their exhibition by all other theatres in the competitive area; that by virtue of this conspiracy among the defendants, plaintiffs have been compelled to pay for such subsequent runs, the same or a higher film rental price for feature pictures than their competitors have paid for the same pictures on a first run showing, and have been compelled, by said conspiracy among the defendants, to charge the same admission prices for said subsequent runs as are charged by plaintiffs' competitors for first run showing of the same feature pictures in the competitive area; that this arbitrary scheme of runs, clearances and admission prices has for its purpose and effect the protection from competition of theatres in the competitive area and more particularly the theatres owned by the exhibitor defendants herein named, thereby creating monopoly of first and early run exhibition of motion pictures for the benefit of the exhibitor defendants in this action, resulting in the complete exclusion of plaintiffs and their Puente Theatre.

Appellants sought treble damages in the sum of $436,187.43 along with costs and for an attorney's fee in the amount of $40,000, also an injunction pendente lite and permanent injunctive relief against the alleged unlawful practices set forth in the complaint. After a trial without a jury the lower court entered a judgment and decree denying relief to plaintiffs and requiring each party to bear its own costs. The appeal is from that judgment.

As indicated above, this case is primarily concerned with the problem of clearances and runs which has to do with the method of distributing motion pictures to exhibitors. The terms "clearances" and "runs" are a familiar part of trade terminology.[3] See United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, 341, 345; Fanchon & Marco v. Paramount Pictures, Inc., D.C., 100 F.Supp. 84, 89; United States v. Paramount Pictures, Inc., 334 U.S. 131, 144, 68 S.Ct. 915, 92 L.Ed. 1260.

Preliminary to further comment on the specific problems presented on this appeal it should be noted that certain principles are well settled by the cases and are applicable to the issues in this case. As pointed out in Fanchon & Marco v. Paramount Pictures, Inc., supra, 100 F.Supp. at page 90 an exhibitor does not have the right to *compel* a motion picture producer to give him a preferred run—this because as a very practical matter the motion picture industry could not operate under a system of simultaneous releases. This obvious fact underlies the doctrine that clearances and runs are not illegal *per se.*

In this case appellants' right of recovery depended upon two factors calling for a determination of what are obviously questions of fact, i. e., whether or not clearance restrictions imposed on appellants were the result of a concerted course of action among appellees (as charged in the complaint) *and* whether or not the clearance restrictions shown by the evidence were unreasonable. As to the second of these factors, the Supreme Court in United States v. Paramount Pictures, supra, 334 U.S. at page 145, 68 S.Ct. 915, 92 L.Ed. 1260 and Schine Chain Theatres v. United States,

3. In United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, 345, the Court pointed out that "runs" and "clearances" are so closely related in their effects as to make them "practically alike." Clearances are given to protect a particular run against the subsequent run and represent the period of time which elapses between the runs of the same feature in a particular area or in specified theatres. Runs are successive exhibitions of a feature in a given area, the first runs being the first exhibitions in that area, the second run being the subsequent one, etc., and includes successive exhibitions in different theatres even though such theatres may be under a common ownership or management.

334 U.S. 110, 121, 68 S.Ct. 947, 92 L.Ed. 1245, has indicated that the criteria to follow requires the trial court, in each instance, to determine whether the restriction as to a particular "run" or runs is *unreasonable*. In light of such requirement the findings of fact on clearances should clearly indicate that the trial court gave full consideration to the complex of factors bearing on the question of reasonableness. In the Schine case the Supreme Court quotes with approval an excerpt from a study of the problems of the motion picture industry which illustrates some of the difficulties encountered in adjusting conflicts when establishing clearance schedules in various areas. (See footnote 10 in the opinion.) The several factors now generally accepted as relevant, rational and logical yardsticks in measuring reasonableness in clearances are noted in United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, 343; United States v. Paramount Pictures, Inc., 334 U.S. 131, 145, 68 S.Ct. 915, 92 L.Ed. 1260.

Judge Yankwich recently pointed out in the Fanchon & Marco case, D.C., 100 F. Supp. 84, 103, that where (as here) the trial court confronts the problem of clearances in a prescribed competitive area, it must determine from all the evidence whether such clearances are reasonable or unreasonable, and if they are found to be unreasonable, whether they have harmed plaintiffs. If from all the evidence, the court concludes that the clearances are reasonable *and* are not the result of or consequent upon any illegal concerted action of the defendants to harm the plaintiffs, then whatever harm may have been visited on appellants is not actionable under the antitrust statutes. Such harm is merely one of the hazards implicit in our competitive system.

■ Whether a conspiracy in restraint of trade existed among all or any group of the defendants was a question of fact to be determined by the court. Windsor Theatre Co. v. Walbrook Amusement Co., 4 Cir., 189 F.2d 797, 798. A recent and enlightening expression on the question of conspiracy appears in Dipson Theatres, Inc., v. Buffalo

Theatres, Inc., 2 Cir., 190 F.2d 951, 958 where the court said:

"In considering evidence of a conspiracy it should be kept in mind that there are a limited number of pictures available for exhibition so that what one exhibitor gets for a given run is necessarily not available to his competitor. A distributor is, therefore, by the very act of distributing pictures, favoring some exhibitors at the expense of others. At best an inference of conspiracy would only arise if it appeared more to the interest of the distributors involved to adopt a different pattern of distribution than the one actually employed. Thus there is nothing illegal in the mere fact that Dipson could not get all the pictures it wanted for the runs it wanted. If it had done so it would have been subject to the same sort of legal action it is now maintaining against the defendants."

■ One of the issues posed by the complaint was the charge that appellees compelled appellants to charge the same admission price for "subsequent runs" as are charged by their exhibitor competitors for "first run" of the same feature pictures in the "competitive area," this to effect "protection" from competition of theatres owned by the three exhibitor competitors. As to this aspect of the case the rule appears to be clear that a grant of clearance, *when not accompanied by a fixing of minimum admission prices or not unduly extended as to area or duration,* affords a fair protection of the interest of the licensee in the run granted without unreasonably interfering with the interest of the public. United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, 341; United States v. Paramount Pictures, Inc., D.C., 85 F.Supp. 881, 897; United States v. Paramount Pictures, Inc., 334 U.S. 131, 145, 68 S.Ct. 915, 92 L. Ed. 1260. (The lower court specifically found against appellants on this fact issue.)

In the Paramount case, D.C., 66 F.Supp. 323, 342, and in Dipson Theatres, Inc., v. Buffalo Theatres, Inc., 2 Cir., 190 F.2d 951, 958, approval is given the doctrine that "the decision of such controversies as may arise

over clearances should be left to local suits in the area concerned".

So much for pertinent and applicable principles of law which guide courts confronted by the issues of the character posed in the instant case. With these bench marks of the law before us our duty is to determine from the record whether the trial court conformed to these standards. We think that it did.

### The Clearance Issue

On this important issue the trial judge found that in light of all the conditions and circumstances bearing on the status of appellants' Puente Theatre, none of the availabilities established or the clearances granted to competitive theatres in the area involved were or are unreasonable. The long record reveals that every phase of the clearance problem was explored and fully presented by opposing counsel. The evidence as a whole convinces us that the reasonableness of all clearances within the area here involved was evaluated by the trial judge only after full consideration of every pertinent fact and circumstance and with a scrupulous regard for and adherence to the rules we have noted above. He gave close attention to the evidence, and in order to familiarize himself with the physical characteristics of, and population centers in the competitive area he personally visited that territory so that he might make a satisfying appraisal of the fact issues immediately related to these problems. His findings of fact on the clearance issue embraced all of the material factors and the oral opinion underlying his findings indicates that they were the product of a painstaking study of the entire body of evidence. It is sufficient to say that the findings on clearances are not clearly erroneous. They are supported by evidence of substantial character; the judge found this evidence convincing and that is as far as our inquiry may go.

### The Conspiracy Charge

It is argued by appellants that there was such a similarity in the business practices and techniques of appellee-distributors in establishing clearances in the competitive area that the lower court erred in failing to infer the existence of a conspiracy in violation of the law. It is claimed that the evidence shows that the distributor defendants below did not act independently in establishing clearances but united in adopting a common plan or scheme which created a warped and distorted competitive situation in the area which resulted in a uniform "exclusion" of appellants; that this artificial system had no relation to appellants' ability as a competitor; that the distributors adopted this illegal course when they willingly and knowingly acceded to a demand of the appellee-competitors of appellants that appellants be eliminated as a competitor by relegating them to a noncompetitive playing position with respect to all other theatres in the area.

The record shows that the methods and procedures adopted and employed by the various appellee-distributors in negotiating and fixing availabilities and clearances in the competitive area were subjected to a thorough and searching inquiry at the hands of appellants' capable counsel. Judge Harrison thus had before him a most revealing record and it convinced him that all of the clearance negotiations and arrangements of the distributor-appellees resulted from nothing more than common business solutions of identical problems in a highly competitive area. So viewed, he concluded that the totality of circumstances required the conclusion that the conspiracy charged in the complaint was not established by the evidence. His finding on this issue was not only adverse to appellants but pointed out that the availibility established by each of the distributors for the Puente Theatre, and the clearance granted by each of these distributors to the theatres in substantial competition with Puente, were each and all established by each of the distributors independently and without any contract, agreement, accommodation, conspiracy, or understanding, either expressed or implied, with any other distributor defendant or with any exhibitor defendant (other than the agreement with the particular exhibitor defendant to which the particular clearance was granted).

If it can be said that somewhat parallel business practices were revealed by the rec-

 

ord, it is certain that these facts wholly failed to achieve a significance which convinced the experienced trier of the facts that they were the product of any sort of concerted action among the distributors. He dealt with a record of conflicting claims on the conspiracy issue and we cannot say that he erred when he believed, or refused to believe, any part of the testimony relative to this matter. The peculiar advantage of the trial judge was completely exemplified in this case and this court would be impinging upon his function if we attempted to reweigh the evidence upon which he rested his ultimate conclusion on the conspiracy issue. His findings thereon rest on evidence which he regarded as substantial and the record does not justify this court in parting company with his appraisal of the weight of this evidence.

### Other Findings

 A word as to other pertinent findings is in order. These include findings that the exhibitor-appellees did not operate under any split-showing arrangement with the distributor-appellees; that the "demands" of appellee-exhibitors for clearance "protection" from producer-appellees against threatened competition from the new Puente Theatre opening in that area were normal and natural acts and reactions of business men trying to protect long established business interests in that area; that the runs and clearances under which all of the theatres involved in this litigation are operating are not arbitrary, uniform or unreasonable nor did these runs and clearances discriminate against appellants; that none of the distributor-appellees have fixed the minimum admission prices charged by appellants but such charges were fixed by appellants in their uncontrolled discretion; that a grant of clearance, when not accompanied by a fixing of minimum admission prices *or* not unduly extended as to area or duration, affords a fair protection of the interest of the licensee in the *run* granted to such licensee without unreasonably interfering with the interest of the public; that clearance, reasonable as to time and area, is essential in the distribution and exhibition of motion pictures and that the practice is of proved utility in the industry and neces-

sary for the reasonable conduct of the business; that appellee-exhibitors did not utilize or employ any mass-buying power to secure preferred runs or clearances or other preferential terms or conditions; that the two Edwards appellees did not threaten to prevent the opening or operation of the Puente Theatre or demand that it be operated or owned as a partnership venture with these appellees nor did they attempt to buy the Puente Theatre at a depreciated price. In a final appraisal of all of the evidence, the court found that appellants have not been damaged by the act of appellees.

We have not undertaken to set out all of the findings of fact. In their essential details they negate all of the material allegations of appellants' complaint. It is sufficient to say that we have examined them and that they find substantial support in the evidence. Since the Conclusions of Law and Judgment are in harmony with the Findings the judgment in favor of appellees must be and is affirmed.