**LOEW'S, Inc. et al.**
v.
**CINEMA AMUSEMENTS, Inc.**
No. 4511.

United States Court of Appeals
Tenth Circuit.

Jan. 7, 1954.

Rehearing Denied Feb. 26, 1954.

---

2. Emphasis added.

C. Stanley Thompson, New York City (Richard H. Shaw, Denver, Colo., was with him on the brief), for appellant. Loew's Incorporated.

James V. Hayes, New York City (Paul J. Quinn, New York City, and Richard H. Shaw, Denver, Colo., were with him on the brief), for appellant RKO Radio Pictures Incorporated.

Frederick W. R. Pride, New York City (Albert J. Gould, Kenneth L. Smith,

Denver, Colo., and Charles F. Young, New York City, were with him on the brief), for appellant Twentieth Century-Fox Film Corporation.

Thurman Arnold and Norman Diamond, Washington, D. C. (L. A. Nikoloric, Portland, Or., Byron R. White, Denver, Colo., Arnold, Fortas & Porter, Washington, D. C., and Lewis, Grant & Davis, Denver, Colo., were with them on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Cinema Amusements, Inc., instituted this action against Loew's, Inc., RKO Radio Pictures, Inc., and Twentieth Century-Fox Film Corporation, sometimes hereinafter referred to as Loew's, RKO, and Fox, respectively. The action was brought under sections 1 and 2 of the Sherman Act, as amended, 26 Stat. 209, 50 Stat. 693, and sections 4 and 16 of the Clayton Act, 38 Stat. 730, 15 U.S.C.A. §§ 1, 2, 15 and 26, for injunctive relief and treble damages.

It was charged in the complaint that plaintiff was an independent operator of a motion picture theatre in Denver, Colorado, called the Broadway theatre; that the profitable operation of any motion picture theatre was dependent upon the ability of the operator to obtain films from the supply controlled by the major producers; that each of the defendants was engaged in the business of producing, distributing, and exhibiting motion pictures in interstate commerce in various parts of the United States and in foreign countries; that the defendants, together with Paramount Pictures, Inc., and Warner Brothers Pictures, Inc., comprised and represented substantially all of the major producers, distributors, and exhibitors of desirable feature motion picture films in the United States; and that by virtue of their copyright ownership of films of that kind, such companies directly or indirectly controlled the major source of supply of desirable feature motion pictures available for exhibition in the United States. It was further charged in substance that the defendants, along with other major producers and distributors not named as defendants, combined and conspired to monopolize the exhibition of all desirable motion pictures in the United States; that by various means, the defendants and other major producers acquired ownership or control of the vast majority of motion picture theatres in cities of substantial size in the United States; that through control of the avenues of distribution of films, the defendants and other major producers and distributors sought to perpetuate the respective monopoly positions enjoyed by them; that they combined and conspired by contract, agreement, and arrangement to assure desirable films to affiliated exhibitors upon profitable terms and to give such affiliates a monopoly of desirable runs and priorities of exhibition of films; that in like manner but with opposite effect, the defendants combined and conspired to use their copyright monopolies to prevent independent exhibitors from competing with affiliated exhibitors; and that in order to accomplish that end, the defendants and other major producers and distributors used their joint control of copyrights to exact exorbitant film rentals from independent operators, to deprive independent operators of desirable runs or priorities of exhibition of films, and to force independent operators to transfer control or profits of their theatres to the major producers. And it was further charged in substance that by reason of the combination and conspiracy, and in furtherance of its objectives, plaintiff was prevented from securing desirable first-run films for exhibition in its theatre; that plaintiff had been the victim of discrimination in the distribution of first-run films in favor of competing theatres, most of which were owned or controlled by some of the defendants; that such monopolistic acts and practices on the part of the defendants were steps in the perpetuation of the broad, nationwide conspiracy between and among the

defendants whereby they attempted to and did monopolize the exhibition of desirable feature films throughout the United States, relegating independent exhibitors including plaintiff to the inferior position of low or last-run theatres regardless of their ability or willingness to pay comparable or higher film rentals in a free and open competitive market. By answer, the defendants admitted some of the allegations contained in the complaint but expressly denied the charge of combination and conspiracy. The cause was tried to a jury; the jury returned a verdict for plaintiff; the court entered judgment for treble damages; and the defendants appealed.

■ Loew's and Fox assert that the court improvidently admitted in evidence certain portions of the final decree entered by the United States Court for Southern New York in the case of United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L. Ed. 1260. The portions of the decree were admitted in evidence as against Loew's and Fox but not as against RKO. It is urged in effect that by the decree the court in New York determined and adjudicated the existence of a combination and conspiracy on an overall national basis; that the decree did not tend to prove the existence of a local combination and conspiracy in Denver; and that therefore the decree was not admissible in evidence in support of the cause of action pleaded in the complaint. Section 5 of the Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 16, provides in presently pertinent part that a final judgment or decree rendered in a criminal prosecution or in a proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant had violated such laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any party against such defendant under such laws as to all matters respecting which the judgment or decree would be an estoppel as between the parties thereto. The statute makes a prior judgment or decree in favor of the United States available to a private litigant as prima facie evidence of all matters in respect to which it would operate as an estoppel between the defendants and the United States. Whether such a judgment or decree is admissible as evidence in an action brought by a private suitor against the parties who were defendants in the earlier action brought by the United States or on its behalf must be determined by reference to the general doctrine of estoppel. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534. In its complaint, plaintiff charged among other things that the monopolistic acts and practices of the defendants in the Denver area were steps in the perpetuation of the broad, nationwide conspiracy between and among the defendants. After other evidence was introduced tending to show a concert of action on the part of the defendants and others to control the motion picture industry in the Denver area with its impact upon the business of plaintiff, the portions of the decree were admitted in evidence. And under the command of the statute, it was available to plaintiff as evidence. Emich Motors Corp. v. General Motors Corp., supra; Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846, certiorari denied, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348. It was not conclusive evidence of the alleged conspiracy on which plaintiff's case was predicated, but it was admissible along with other evidence in making out a prima facie case against Loew's and Fox. Theatre Enterprises v. Paramount Film Distributing Corp., 74 S.Ct. 257.

■ The action of the court in withdrawing from the jury paragraph 17 of the decree entered by the court in New York is challenged. The defendants offered that paragraph in evidence. It provided that nothing contained in the decree should be construed to limit, impair, or restrict in any manner whatsoever the right of each distributor defendant to license the exhibition, or arrange by contract for the exhibition, of any or

all of the motion pictures which such distributor may at any time distribute in any theatre in the ownership, lease, management, or operation, or in the proceeds or profits from the management or operation of which it directly or indirectly had a financial interest at the time of the entry of the decree and also at the time of the license. The court admitted the paragraph in evidence but later withdrew it from the jury. At the time of withdrawing it, the court instructed the jury to disregard it entirely, to not draw any inferences or conclusions from it, and as much as possible to erase it from their minds. It is argued that the decree had a direct bearing upon the conduct of the defendants and the propriety thereof; that it was admissible for the purpose of throwing light upon that issue; and that the instruction of the court at the time of the withdrawal of the particular paragraph unquestionably conveyed to the jury the impression that doubt existed in respect to the right of the defendants to license their pictures to theatres in which they had an interest. Whether the defendants had a right to license films which they produced or distributed for exhibition in theatres in which they had an interest was a matter of law to be covered in the instructions of the court. And in its general charge given at the conclusion of the trial, the court instructed the jury in clear language that if each of the defendants acted independently in licensing its films to a theatre or theatres in which it may have had a financial interest, then even though the licensing terms were similar or identical in certain respects, there was no violation of law and plaintiff was not entitled to recover unless the licensing contracts were the result of a conspiracy; and that it was for the jury to determine whether any similarity of conduct on the part of the defendants which appeared in evidence in the case was the result of an understanding, combination, or conspiracy to act together or was caused by the fact that the distributors of motion pictures were subjected to the same competitive forces or by reason of the fact that in the same competitive market in which they dealt competition resulted in similarity. The instructions were a correct exposition of the principles of law governing the question. Westway Theatre v. Twentieth Century-Fox Film Corp., D.C., 30 F.Supp. 830, affirmed, 4 Cir., 113 F.2d 932. And in the absence of a showing to the contrary, it must be assumed that the jury understood and applied the instructions in reaching its verdict. Gregory v. Morris, 96 U.S. 619, 24 L.Ed. 740; Husky Refining Co. v. Barnes, 9 Cir., 119 F.2d 715, 134 A.L.R. 1221; Gillette Motor Transport Co. v. Whitfield, 145 Tex. 571, 200 S.W.2d 624. Therefore, the withdrawal from the jury of the particular paragraph in the final decree, together with the instructions given at the time of its withdrawal, did not prejudice the defendants.

■ It is contended that there was no proof of the fact of damage to plaintiff; that assuming arguendo the introduction of adequate proof of the fact of damage, there was no proper evidence to show the amount of such damage; and that it was error to admit in evidence the financial results of operation of the Denver and the Paramount theatres. The argument in support of the contention is that this was not a case in which plaintiff had lost money or was forced out of business; that plaintiff's operation of the Broadway theatre resulted in profits, not losses; that there was no evidence that with a first-run policy the theatre would have earned larger profits; that the best evidence of the amount of damages suffered by plaintiff would have been a comparison of the results of operation of the Broadway theatre during the period here in question with the results of its operation during the years commencing late in 1948, when it did operate on a first-run basis; that the Denham theatre was the theatre in Denver most comparable to the Broadway; that the Denver and the Paramount theatres were not comparable to the Broadway; that if evidence were admitted tending to show the results of operation of a theatre comparable to the Broadway, it should have been confined to the Denham; and that evidence

should not have been admitted in respect to the results of operation of the Denver and the Paramount theatres. The Denham, the Denver, and the Paramount were first-run theatres. Evidence was submitted tending to show the location, seating capacity, equipment, attractiveness to patrons, availability to transient trade, and other pertinent features of the Broadway, the Denham, the Denver, and the Paramount theatres. And with the consent of the parties and under the direction of the court, the jury went to the several theatres and viewed them, inside and outside. Each of the other three theatres was comparable to the Broadway in some respects but it may be said that on the whole the Denham was the most comparable to it. Evidence was also introduced to show the financial results of operation of the several theatres during the period in question. In arriving at such results film rentals and advertising costs were deducted from gross receipts. In respect to the Broadway, additional deductions were made for increased rentals it would have paid if operated on a first-run basis and the increased costs of advertising it would have incurred as a first-run theatre. The results of operation disclosed that each of the other three theatres earned much larger profits than did the Broadway during the period in question. Introduction of the two classes of evidence was a proper method of establishing damages as it tended to show that the inability of plaintiff to obtain desirable films for exhibition in its theatre adversely affected its receipts as well as the extent of the resulting financial injury. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S. Ct. 574, 90 L.Ed. 652. The Denham theatre being more comparable to the Broadway than the Denver or the Paramount, evidence showing the financial results of operation of that theatre was entitled to more weight than was the evidence showing the results of the Denver and the Paramount. But the difference went to the weight of the evidence, not the admissibility of the evidence relating to the operations of the Denver and Paramount theatres.

It is contended that the court erred in giving to the jury certain instructions in its general charge. These need not be discussed singly or seriatim. The court instructed the jury with commendable clarity, completeness, and correctness upon every material issue in the case. The instructions bear unmistakable tokens of painstaking preparation in respect to all of the several issues. And there is no tenable basis for the contention that the instructions were erroneous with prejudicial effect to the defendants. It is also contended that the court should have given certain requested instructions which were refused. But where the material issues in a case have been comprehensively and correctly covered in the general instructions, the court is not required to give requested instructions in terms to suit the desires of either party. Since the issues had been fairly and comprehensively covered in the general instructions, the refusal of the requested instructions did not constitute error even though they were correct statements of law. Telluride Power Co. v. Williams, 10 Cir., 164 F.2d 685; Derounian v. Stokes, 10 Cir., 168 F.2d 305; Missouri, Kansas & Texas Railway Co. v. Jackson, 10 Cir., 174 F.2d 297.

It is insisted with emphasis that the evidence was insufficient as a matter of law to support a finding of conspiracy. Certain established rules must be kept in mind in resolving the question. One of such rules is that the producers and distributors of motion picture films are not required to license their products to every exhibitor who desires or requests them. Neither are they under duty to accord to an exhibitor any particular run—first or otherwise—of films which are furnished him. An exhibitor does not have the absolute right to compel producers and distributors to furnish him films or to give him the privilege of exhibiting them on the basis of any specified run. William Goldman Theatres, Inc., v. Loew's, Inc., 3 Cir., 150 F.2d 738, reaffirmed on a subsequent appeal, 3 Cir., 164 F.2d 1021, certiorari denied, 334 U.S. 811, 68 S.Ct. 1016, 92 L

Ed. 1742; Chorak v. RKO Radio Pictures, 9 Cir., 196 F.2d 225, certiorari denied, 344 U.S. 887, 73 S.Ct. 186. Where licenses, runs, moveovers, or clearances result solely from private contracts between producers and distributors and exhibitors, alone and without more, a civil action by an exhibitor for violation of the antitrust statutes will not lie. Westway Theatre v. Twentieth Century-Fox Film Corp., supra. But the antitrust statutes do extend protection to an exhibitor from a combination or concert on the part of producers and distributors in respect to licenses, runs, moveovers, and clearances which are intended to injure and do injure the business of such exhibitor and thus weaken his position in the field of competition or eliminate him therefrom. United States v. Paramount Pictures, Inc., supra; William Goldman Theatres, Inc., v. Loew's, Inc., supra. Another rule to be borne in mind is that it is not necessary in a case of this kind that there be direct evidence of the existence of a conspiracy of the kind charged in the complaint. More often than otherwise, direct evidence of such a conspiracy is not available. But it may be proved by a development and collation of the circumstances. It may be inferred from the things said and done. Eastern States Retail Lumber Dealers' Association v. United States, 234 U.S. 600, 34 S. Ct. 951, 58 L.Ed. 1490; Bordonaro Bros. Theatres v. Paramount Pictures, 2 Cir., 176 F.2d 594. And a third rule not to be overlooked is that it is the historic province and function of the jury to observe the witnesses while testifying, to appraise their credibility, to determine the weight to be given to their testimony, to draw inferences from the facts established, to resolve conflicts in the evidence, and to reach ultimate conclusions of fact. And when that has been done and a verdict has been returned, an appellate court will not judge the credibility of witnesses or weigh conflicting evidence. Instead, it will take that view of the evidence most favorable to the prevailing party and uphold the verdict if there is substantial evidence to support it. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Magnolia Petroleum Co. v. Howard, 10 Cir., 193 F.2d 269; Baer Bros. Land & Cattle Co. v. Reed, 10 Cir., 197 F.2d 569.

Viewed in the light afforded by these rules, was the evidence in its entirety insufficient as a matter of law to support a finding of combination or conspiracy falling within the interdiction of the antitrust acts? We think the answer is in the negative. The trial was long and the printed record before us consists of more than 1,200 pages. A full statement of the testimony and the written evidence would unduly prolong this opinion without serving any useful purpose. A summarized statement must suffice. While there were sharp conflicts in the testimony, these facts were either admitted or evidence was adduced which tended to prove them. Loew's, RKO, Fox, Paramount, Warner Brothers, United Artists, and Universal distributed the great majority of all desirable motion picture films. Fox Inter-Mountain Theatres, Inc., hereinafter referred to as Fox Theatres, was a subsidiary of Fox. It operated approximately ninety motion picture theatres in the Rocky Mountain area. Some of these were in Denver, including the Denver theatre and the Paramount theatre. It held a lease covering the Broadway theatre building, owned certain furnishings and fixtures therein, and operated the theatre. Its lease expired and plaintiff succeeded it as lessee of the building, effective November 1, 1944. It would have been good business for Fox Theatres to sell to plaintiff the furnishings and fixtures in the building and plaintiff was willing to purchase them, but Fox Theatres refused to sell at a reasonable price. It removed its furnishings and fixtures and placed a sign over the door stating that the present policy was discontinued. At substantial expense, plaintiff renovated the building and installed therein new fixtures, furnishings, and conveniences. After the theatre had been renovated and improved, it was fairly comparable in varying degrees to the largest and best first-run theatres in Denver and was worthy of

first-run pictures. Films produced by the Paramount Company were exhibited first run at the Denham theatre. Fox distributed its own films, and films distributed by it were exhibited first-run at the Denver and the Paramount theatres. Throughout the period in question here, Loew's and RKO, through ownership of stock, each owned one-half interest in the Orpheum theatre. Loew's distributed films of certain producers, including those of Metro-Goldwyn-Mayer Company. RKO distributed its own films and films produced by certain producers, including those of Samuel Goldwyn Productions, Inc., Walt Disney Studios, and International Films. Films distributed by Loew's and RKO were exhibited first run at the Orpheum theatre. For about six years prior to the time plaintiff's lease of the Broadway theatre became effective, films distributed by Loew's and RKO were exhibited at the Broadway on the basis of a moveover run after being exhibited at the Orpheum. That was done pursuant to an arrangement between Fox Theatres and Loew's and RKO. In return for a participation in the profits of the Broadway theatre, the Orpheum waived its clearance on such films. After plaintiff's lease covering the Broadway was executed, Loew's and RKO advised plaintiff that films would not be furnished it on the basis of a moveover from the Orpheum. Loew's stated that the furnishing of films on moveover from the Orpheum had been possible because the Orpheum had an interest in the Broadway, and that if the Orpheum did not continue to have an interest in the Broadway the products of Loew's could not be licensed to the Broadway on a moveover basis. RKO advised plaintiff that the prior operator of the Broadway was licensed to exhibit RKO products on a moveover run after exhibition at the Orpheum because the Orpheum which was affiliated with RKO had a financial interest in the operation of the Broadway, and that since the Orpheum no longer had such interest there was no justifiable basis for licensing the exhibition of films at the Broadway on the basis of a moveover run from the Orpheum. Plaintiff advised RKO that it was willing to go along with the Orpheum and its owners, Loew's and RKO, on the same basis that Fox Theatres did on a moveover run from the Orpheum. The Orpheum advised plaintiff that its letter to RKO had been referred to the Orpheum; that the results of the previous participation in the Broadway theatre had been reviewed, and that the results did not justify a renewal of the clearance which the Orpheum previously granted to the Broadway. Unable to effectuate the arrangement for moveover runs from the Orpheum, plaintiff complained to the Department of Justice and the Department advised RKO that it had received the complaint and that before taking any specific action it would appreciate any comments concerning its merits. Thereafter, the Orpheum advised plaintiff that upon reconsideration it had decided to accept for a one-year trial period the moveover arrangement which plaintiff had requested and that a proposed agreement to that effect was enclosed. The proposed agreement conformed in all material respects to the arrangement between Fox Theatres and Loew's and RKO for the moveover runs from the Orpheum. The representative of plaintiff to whom the proposed contract was forwarded advised the Orpheum that his attorney was reviewing the matter and that due to illness it would be impossible to reach a conclusion until sometime during the following month. For sometime thereafter, such representative was preoccupied with personal affairs, including serious illness in his family. About three months after the proposed contract was forwarded to plaintiff, the Orpheum advised plaintiff that unless the proposed arrangement was accepted within seven days it was to be considered as withdrawn. Thereafter, plaintiff reached the conclusion that the proposed agreement provided for the payment of exorbitant sums to the Orpheum and it was not accepted. Plaintiff made repeated requests of defendants and other producers and distributors for first run films, moveover films, and other desirable films; but with few incidental exceptions its requests were not granted. In some instances, the requests were rejected even though

the requested films were not exhibited in any other theatre in Denver. In some instances, the producer or distributor to whom the request was made had a surplus of films available for exhibition in Denver. And in a few instances, the representative to whom the request was made recommended that the desired films be made available to plaintiff, but when the request accompanied by the recommendation reached a higher level, it was rejected. During the negotiations between Fox Theatres and plaintiff in respect to the former selling to the latter the fixtures and furnishings in the Broadway theatre, inquiry was made as to whether plaintiff would be interested in selling its lease. And on another occasion when plaintiff was endeavoring to obtain films from a distributor not joined as a defendant herein, it was suggested that plaintiff join the Fox Circuit. Evidence was adduced tending to establish other facts and circumstances but space will not be consumed in detailing it. The evidence together with its inferences was sufficient to warrant the jury in finding that by combination and concert, the defendants and other producers and distributors maintained in Denver a discriminatory system in the distribution of motion picture films for exhibition there; that the combination and conspiracy was intended in part to injure plaintiff or to eliminate it from the field of competition in the motion picture industry; and that it did proximately injure the business of plaintiff. Cf. Bigelow v. RKO Radio Pictures, supra.

Finally, it is urged that the verdict was grossly excessive and that the trial court abused its discretion in failing to set it aside. The verdict was for $100,000, and the judgment was for $300,000, exclusive of attorneys fees. The measure of damages to which plaintiff is entitled in a case of this kind is the pecuniary loss to its business or property resulting proximately from the combination or conspiracy of the defendants. Damages must be actual, not speculative or conjectural. But they are not rendered speculative or conjectural merely because they cannot be calculated with mathematical exactness. It is sufficient if a reasonable basis of computation is afforded, even though the result be only an approximation. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U. S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, certiorari denied, 344 U.S. 837, 73 S.Ct. 46; Mountain States Tel. & Tel. Co. v. Hinchcliffe, 10 Cir., 204 F.2d 381. Ordinarily, it is the exclusive function of the jury to fix the amount of damages. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., supra. In doing that, it is the prerogative of the jury to make a just and reasonable estimate of the damages based upon relevant data, and render its verdict accordingly. And in doing so, the jury may act upon probable and inferential proof as well as that which is direct and positive. Bigelow v. RKO Radio Pictures, supra. While the verdict was large, viewing the record in its entirety we are unable to say that it was grossly excessive or that the trial court abused its discretion in refusing to set it aside on that ground.

The judgment is affirmed.