**L. D. LLOYD,** Plaintiff-Appellee,

v.

**Jack GRYNBERG, an individual d/b/a Jack Grynberg and Associates, and International Timber Co., a corporation, Defendant-Appellant.**

**No. 71–1430.**

United States Court of Appeals,
Tenth Circuit.

July 12, 1972.

Ted J. Gengler, Denver, Colo. (Raymond J. Gengler, Denver, Colo., on brief), for defendant-appellant.

Roger Sollenbarger, Lakewood, Colo., for plaintiff-appellee.

Before HILL, HOLLOWAY and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

This appeal is from a judgment after a jury verdict in a diversity action brought in the District of Colorado upon an alleged breach of contract.

The basic facts in the case are essentially without controversy. The appellee, Lloyd, who was the plaintiff in the trial court, is a consultant forester and is a recognized expert in his field of endeavor with an impressive background of employment, including much experience in overseas forestry operations. The appellant, Grynberg, one of the defendants in the trial court, is a petroleum and geophysical engineer who has organized several natural resource investment companies. The other defendant and appellant, International Timber Co., a corporation, was organized by Grynberg with the intention of securing worldwide timber concessions in its name, and upon the basis of these proposed holdings to secure a $5,000,000 stock issue for the development of the timber concessions.

In his search for these needed timber concessions, Grynberg sought and procured the services of Lloyd. After several conferences between the parties, a letter contract dated June 23, 1969, was entered into between them.[1]

Immediately following the execution of the contract, Lloyd embarked upon the employment venture and traveled extensively overseas seeking timber suitable for acquisition and development by International. Upon his return from this trip, he filed a detailed report with Grynberg, therein setting forth the accomplishments of his trip. The report discloses the location of prospective timber concessions, but does not show any actual acquisitions. On September 23, 1969, after Lloyd returned from the trip and made his report, Grynberg became dissatisfied with the arrangement between the parties, and by a letter of that date attempted to terminate his agreement with Lloyd.

After some negotiations between the parties had failed, Lloyd filed this action against Grynberg under the contract of June 23 to recover the balance of an alleged two-year salary at $1,000 per month, the balance of expenses due, and the value of corporate stock in In-

1.  June 23, 1969
    Mr. L. D. Lloyd
    Flying L Ranch
    Glenwood, Washington 98619
    Dear Les:
    This letter will set forth an understanding between us.
    You have joined my firm, Jack Grynberg and Associates, which is going to seek timber concessions around the world. Today we laid the groundwork for the formation of a Sub-chapter S corporation entitled "International Timber Company", of which you were nominated Executive Vice President.
    Jack Grynberg and Associates will seek concessions around the world, and you will be in charge of all the technical work. In addition, you will initially be in charge of all negotiations, until such time as a proper negotiator joins your team.
    Jack Grynberg and Associates agrees to pay you a consulting fee of $1,000 a month upon receipt of a statement from you. Jack Grynberg and Associates will also pay all travel, telephone, correspond-

ence, and other expenses necessary to the conduct of this business.
    In addition, you are to be issued twenty thousand dollars' worth of stock per year in any new corporation, which will go public whenever we have accumulated enough timber properties to justify a public underwriting in excess of five million dollars. The stock will be valued on the basis of a public price at such a time as the underwriter issues the stock to the public. This stock is to be issued to you on a tax-free basis.
    It is understood between us that we should be able to get the company going within a two-year period.
    If this meets with your approval, please sign in the space provided below.
    Sincerely yours,
    /s/ Jack J. Grynberg
    Jack Grynberg and Associates
JJG:jl
AGREED AND ACCEPTED THIS 23rd day of June, 1969.
    /s/ L.D. Lloyd

ternational which Grynberg agreed to give to Lloyd for each of the two years' employment. At the trial of the case, the jury returned a verdict awarding Lloyd $18,000 for salary due, and the sum of $1,332 for unpaid expenses.

Appellant first contends here that the letter contract sued upon was void and unenforceable under the provisions of the Colorado Statutes of Frauds, and that the trial court, at the close of the plaintiff's evidence, erred as a matter of law in not ruling to that effect. The appellant also contends that the verdict and judgment are contrary to the evidence in that the same clearly showed that Lloyd acted in an incompetent manner and contrary to the interest of Grynberg, thereby justifying the termination of Lloyd's employment.

Prior to submission of the case to the jury, the court, as a matter of law, denied recovery upon the value of the corporate stock claimed by Lloyd to be due. No cross-appeal was taken from this action by the court. Therefore, we will not consider appellant's contentions here with reference to the corporate stock.

In our consideration of the appeal, it is important to note that the case was tried and submitted to a jury upon appropriate and adequate jury instructions, and no required objections material here were made to the instructions, after given, as provided for by Rule 51, F.R.Civ.P. The basis of the submission of the case to the jury by the trial judge is dispositive of the issues raised here.

By the answer, the pre-trial order, and a motion made at the close of the plaintiff's evidence, counsel for Grynberg raised the issue of the application of the Colorado Statutes of Frauds, C.R. S.1963, 59–1–12. The trial judge overruled this motion made at the close of the plaintiff's case.

■ For the Statutes of Frauds to constitute a defense in this case, we would have to conclude that the agreement between the parties was not evidenced by a writing subscribed to by the parties, and was not to be performed within one year. An examination of the June 23 letter, without doubt, discloses that it was intended to be an employment agreement between the parties; the duties to be performed by Lloyd and his compensation are clearly set out, and the letter is signed by Grynberg and "agreed to and accepted" by Lloyd in writing at the bottom of the letter. It may be conceded that the term of the employment is not set out as clearly as it might have been. From a legal standpoint, it lacks only a clarification as to this ambiguity in order to make it a plain, complete and binding contract. The jury, with appropriate instructions from the court, resolved any question as to the term of employment intended by the parties. In addition, the jury rejected Grynberg's contention that Lloyd acted in an incompetent manner in performing his part of the contract.

■ Included in the parol evidence admitted during the trial was evidence of the preliminary negotiations between the parties and statements of the parties made contemporaneously with the making of the contract. This type of evidence is clearly admissible to enable the jury to interpret and give meaning to the terms contained in the contract.[2]

■ In the instructions given to the jury at the trial of this case, the trial judge succinctly stated the contentions of the parties involved. The court advised the jury that the defendant contended Lloyd was not hired for two years or for any period; that he was hired on a temporary basis; further, that there was not a clear understanding expressed in the contract whereby the

2. Lee E. Morris, Inc. v. United States for Use and Benefit and on Behalf of Roberts, 219 F.2d 541 (10th Cir. 1955); Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 178 F.2d 541 (9th Cir. 1949). Corbin on Contracts, Ch. 24 § 543, Ch. 26 § 579.

defendant made a promise which is sufficiently clear that it can be recognized as a contract and can be enforced; and further that the defendants contended that if it be assumed there was a contract, nevertheless the plaintiff violated the contract by not properly carrying out his functions under it and therefore the defendant had a right to terminate plaintiff's employment as it did and that plaintiff cannot recover upon the contract. The court further instructed, in substance, that if the jury found that the contract does have some ambiguity as to time for performance, the parties have a right to introduce oral evidence as to what the intention of the parties was; that oral evidence of the surrounding facts and circumstances of the execution of the contract had been shown by the evidence, but only to give the jury a basis from which to determine the intention of the parties as to the period of time plaintiff would be employed by the defendant. The statements of the law given by the court to the jury were correct statements of the law. We must assume that the jurors followed the law as given to them by the court.[3] In the interpretation of the contract as to the term of employment, we must assume from the verdict returned that the jury generally adopted the contentions of the plaintiff-appellee and rejected the contentions of the defendant-appellant. The law is clear that an appellate court will not upset or disturb a jury verdict if the case has been submitted upon proper and adequate instructions and the verdict is supported by the evidence.[4] We have carefully considered the evidence as adduced in the trial of the case and the instructions given to the jury in submitting the case. We are compelled to conclude that the case was properly submitted to the jury with proper and adequate instructions and there is ample evidence to support the verdict returned by the jury. We find no merit to the contentions of appellant.

Affirmed.

3. Atchison, T. & S.F. Ry. Co. v. Andrews, 211 F.2d 264 (10th Cir. 1954); Loew's Inc. v. Cinema Amusements, 210 F.2d 86 (10th Cir. 1954), aff'd in part and rev'd in part on other grounds sub nom. United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, cert. denied, 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 1115.

4. See Sta-Rite Industries, Inc. v. Johnson, 453 F.2d 1192 (10th Cir. 1972); Krieger v. Bausch, 377 F.2d 398 (10th Cir. 1967).