[No. 5865.]

BAUER v. GOLDMAN.

1.   Trial—Questions for the Court or Jury—When a contract is entirely in writing, the court is to construe it and determine its effect.—(165)

2.   Contracts Construed—Defendant sent plaintiff a telegram offering a weekly salary. Later he wrote: "If you will stay and can hold your position for one season, I will return you your railroad fare," meaning plaintiff's fare in coming from her home

to the place of employment. Held, an employment by the week, terminable by either party at the end of any week.—(165)

3. Evidence—Competency—A letter written by a former employer certifying to the plaintiff's capacity and fidelity is not admissible to establish the plaintiff's character therein ascribed to her; being the unsworn declarations of a stranger to the record, it is not admissible for any purpose.—(167)

*Appeal from Denver County Court* — Hon. CHARLES McCALL, Judge.

Messrs. MULLER & SUMMERFIELD, for appellant.

No appearance for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Lillian M. Goldman, sued Louis Bauer for an alleged breach of contract for services. The contract is evidenced by a telegram and letters that passed between them, plaintiff then being in Chicago and defendant in Denver. Plaintiff says that before the employment was consummated she had a conversation with defendant in Denver in which the terms of the contract were discussed, but this conversation, as testified to by her, in no wise changes the force and effect of the engagement as they appear in the letters and telegram in evidence, on the strength of which she left Chicago and came to Denver to begin work. Defendant sent plaintiff a telegram offering her a position as a saleswoman in his millinery store in Denver and stated "Salary same as offered Miss Fieldman." To this letter plaintiff answered: "Now in regard to salary, you say same as was offered Miss Fieldman. We do not know what salary was offered her * * * So please let us know whether you or we stand transportation charges." In reply to this letter of plaintiff the defendant wrote her a letter in which, after stating

that he supposed she knew what salary had been offered Miss Fieldman, he said: "I offered Miss Fieldman $15.00 per week straight salary the year around, that is what I meant when I telegraphed same as Miss Fieldman, and will after you are acquainted with stock and trade give you a commission which will run your salary to quite a good figure. As to R. R. fare that is of secondary consideration. * * * if you will stay and can hold position for the one season, at the end of which I will return you your R. R. fare."

The foregoing is all the evidence as to the contract. At the trial defendant justified his discharge of plaintiff at the end of a given week upon the ground that she was disobedient to his directions and indifferent in her work. The court declined, at defendant's request, to determine from the foregoing evidence, as to which there was no controversy, the duration of the contract but, on the contrary; instructed the jury to determine the same from the written and oral evidence. In this the court was manifestly wrong. The entire contract is shown by the writings, and the oral evidence, as we have said, in no wise changes, contradicts or qualifies it, but is merely a repetition, in substantially the same words, of the language of the letter. Hence it was for the court, not the jury, to say what the contract was. Plaintiff contends on this evidence that she was hired by defendant for a period of one year from the time she began work in April, 1905, at a salary of $15.00 per week, payable weekly, with the further agreement that if she stayed in the service for one season and held her position the amount of her railroad fare would be repaid; while defendant contends that the employment was a weekly employment which might be terminated by either party at the end of any week.

It is entirely clear that the contract was not for a year at a compensation of so much per week, but that at most it was by the week. A case, in some of its features, quite in point is *Kansas Pacific Railway Company v. Roberson,* 3 Colo. 142. The plaintiff there was appointed agent of the railway company on the Pacific coast, and before the contract was made a telegram was sent to plaintiff asking what salary he would require, to which he answered "Three thousand dollars per annum." The general superintendent of the company wired as follows: "Will engage you to commence October 1st." Upon these facts the plaintiff claimed a hiring for a year. The court by Hallett, C. J., held that, in the absence of custom or usage to the contrary, such a general hiring as the evidence disclosed cannot be regarded as a contract for a year's service. In the course of the opinion he said that this telegram must be taken as fixing the rate of compensation and not prescribing the duration of the contract. In that case, as in the case at bar, the reply was in answer to a specific question concerning salary, and Judge Hallett said that it probably was understood as referring only to the rate of compensation. So here, when defendant in his letter to plaintiff said that the salary was to be "$15.00 per week straight salary the year around," this was in answer to a letter of plaintiff asking what the salary was to be. As fortifying this construction and indicating the intention and understanding of the parties, are other portions of defendant's letter in which he says that if she should stay and hold the position for the one season he would repay to her railroad fare from Chicago to Denver. If the parties understood the hiring was for a year certainly defendant would not have promised to return this fare if plaintiff should stay and hold her position for one season. This conclusion is also

strengthened by plaintiff's own testimony that, in the millinery business, the year is divided into two seasons, the first, or spring, season beginning about the first of April and ending the latter part of June, the fall season starting in September and ending near Christmas. During these two seasons the business is good and prices for saleswomen are usually higher; while during other portions of the year the business is slack and the salaries lower. It was evidently to this custom and division of the year into seasons, well understood in the trade, that defendant referred when he wrote that he would give "$15.00 per week straight salary the year around." We are clearly of opinion that the contract was at best by the week and not for the year, and might be terminated by either party at the end of any week.

Some of the cases in line with our conclusion are: *Jones v. Vestry, etc.,* 19 Fed. 59; *Martin v. Ins. Co.,* 148 N. Y. 117; 12 Fed. Cas., p. 805, case No. 6, 831, *The Hudson; Boogher v. Life Ins. Co.,* 8 Mo. App. 533; *Stanford v. Fisher Varnish Co.,* 43 N. J. L. 151; *Granger v. American Brewing Co.,* 55 N. Y. Supp. 695; *Edwards v. Railroad Co.,* 121 N. C. 490; *Pinckney v. Talmage,* 32 S. C. 364; *Fuller v. White Lead Works,* 111 Mich. 221; *Kellogg v. Ins. Co.,* 94 Wis. 554.

The court also committed error in receiving in evidence over defendant's objection a letter written to plaintiff by a former employer certifying that she was a good saleslady and attentive to business and honest and reliable. The issue submitted to the jury, to which this evidence was supposed to be responsive, was not as to plaintiff's competency, because defendant admitted that. The dispute tried and submitted was whether she was disobedient and properly attended to her duties. This letter of recommendation was inadmissible upon such issue.

—*Stone v. Vimont*, 7 Mo. App. 277; *Rich v. Fendler*, 55 Mo. App. 236.

If, however, competency was in issue, the letter was not legitimate evidence. The writer was not under oath and defendant had no opportunity to cross-examine.

For the foregoing reasons the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

Chief Justice Steele and Mr. Justice Gabbert concur.