Ben M. DORMAN, Petitioner,

v.

PETROL ASPEN, INC., Respondent.

No. 95SC96.

Supreme Court of Colorado,
En Banc.

April 15, 1996.

**910**

Sander N. Karp, Thomas A. Feldman, Denver, for Petitioner.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Lance R. Coté, Snowmass Village, for Respondent.

Barry D. Roseman, Denver, Jeffrey Menter, Englewood, for Amicus Curiae Plaintiff Employment Lawyers Association.

Justice LOHR delivered the Opinion of the Court.

This case presents the issue of whether a contract of employment between the plaintiff employee, Ben M. Dorman, and the defendant employer, Petrol Aspen, Inc., provided for employment at will or for a definite term. The district court granted Petrol Aspen's motion to dismiss Dorman's complaint, which alleged breach of contract, promissory estoppel, and breach of an alleged duty of good faith and fair dealing, all arising from the termination of Dorman's employment by Petrol Aspen. Petrol Aspen's motion was brought under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted and was predicated on the contention that Dorman's employment was at will

and therefore could be terminated by Petrol Aspen at any time without incurring liability to Dorman. The Colorado Court of Appeals affirmed the dismissal, holding that under applicable legal principles, the contract provided for employment at will. *Dorman v. Petrol Aspen, Inc.*, No. 93CA1714 (Colo.App. Dec. 15, 1994). We hold that the contract is ambiguous as to the term of employment, that Dorman must be permitted to offer extrinsic evidence to resolve the ambiguity, and that the trial court therefore erred in dismissing the complaint. Accordingly, we reverse the judgment of the court of appeals and return the case to that court with directions to reverse the district court's judgment and remand the case to the district court for further proceedings.

### I.

On September 14, 1992, Ben M. Dorman filed a complaint against Petrol Aspen, Inc. (Petrol Aspen) in Garfield County District Court, alleging breach of contract, promissory estoppel, and breach of an alleged duty of good faith and fair dealing. In his complaint, Dorman contended (1) that Petrol Aspen operates an Amoco gasoline and service station in Aspen, Colorado, (2) that Petrol Aspen extended an employment offer to Dorman after negotiations, (3) that Dorman left gainful employment elsewhere and began work for Petrol Aspen as a result of the negotiations and in reliance upon the employment offer letter that he received from Petrol Aspen, and (4) that Petrol Aspen terminated Dorman's employment after approximately four months, in breach of his employment contract. Dorman attached the employment offer letter as an exhibit to the complaint, and we reproduce the letter in its entirety as Appendix A to this opinion.[1]

Petrol Aspen filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to C.R.C.P. 12(b)(5), asserting in part that the exhibit attached to Dorman's complaint "does not constitute a

---

1. At the time the letter was written, Petrol Aspen did not exist. Christopher Smith, who later became president of Petrol Aspen, signed the letter on behalf of "Aspen Petro, Inc.," a corporation which was never formed. Aspen Petro, Inc. is

not a party to this action, and, for purposes of this opinion, we will refer, as do the parties, only to Petrol Aspen and assume that Smith's letter bound Petrol Aspen to the offer stated therein.

contract for employment other than at-will." Dorman responded by asserting in a brief in opposition to the motion to dismiss that the contract offered employment for a definite period of time and thus was not terminable during the agreed employment period without just cause. Alternatively, Dorman contended that at minimum the contract was ambiguous as to the employment term and that he therefore "must be entitled to engage in discovery in order to determine the parties' intent with regard to the intended length of his employment." The district court granted Petrol Aspen's motion to dismiss in a brief written order, noting only that its decision was based on "the reasons stated in [Petrol Aspen's] Motion to Dismiss and in [Petrol Aspen's] Memoranda in support thereof."

The Colorado Court of Appeals affirmed the judgment of the district court in an unpublished opinion. *Dorman,* slip op. at 4. The court relied on its prior decision in *Justice v. Stanley Aviation Corp.,* 35 Colo.App. 1, 4, 530 P.2d 984, 985 (1974), in rejecting Dorman's contention that the employment agreement was ambiguous as to duration of employment and holding that it created employment terminable at the will of either party. In view of its conclusion that Dorman's contract with Petrol Aspen was one of employment at will, the court declined to address Dorman's other claims.

We granted certiorari to review the decision of the court of appeals.[2] We now reverse based on our determination that the court of appeals misapplied *Justice,* 35 Colo. App. 1, 530 P.2d 984, in that the employment contract between Petrol Aspen and Dorman was sufficiently ambiguous to preclude the trial court from granting Petrol Aspen's motion to dismiss pursuant to C.R.C.P. 12(b)(5).

**2.** We granted certiorari on the following questions, as reframed by this court:
Whether the court of appeals misapplied the holding of *Justice v. Stanley Aviation Corp.,* 35 Colo.App. 1, 530 P.2d 984 (1974), to the facts of this case in determining the contract between the parties was for at-will employment.
Whether the court of appeals erred in determining that the employment agreement was not ambiguous with respect to the issue of duration of employment.

## II.

The purpose of a motion under C.R.C.P. 12(b)(5) to dismiss a complaint for failure to state a claim upon which relief can be granted is to test the formal sufficiency of the complaint. *Dunlap v. Colorado Springs Cablevision,* 829 P.2d 1286, 1290 (Colo.1992). Under our rules for notice pleading, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." C.R.C.P. 8(a)(2); *Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 122 (Colo.1992). In evaluating a motion to dismiss under C.R.C.P. 12(b)(5), all averments of material fact must be accepted as true, *Shapiro,* 823 P.2d at 122, and the allegations of the complaint must be viewed in the light most favorable to the plaintiff, *Dunlap,* 829 P.2d at 1291. C.R.C.P. 12(b)(5) motions to dismiss a complaint are viewed with disfavor, and a complaint is not to be dismissed unless it appears beyond doubt that the plaintiff cannot prove facts in support of the claim that would entitle the plaintiff to relief. *Id.* In evaluating such motions, trial courts and appellate courts apply the same standards. *Shapiro,* 823 P.2d at 123. With these principles in mind, we first set forth the relevant standards for contract interpretation and then assess the sufficiency of Dorman's complaint.

## III.

When a document is unambiguous, it cannot be varied by extrinsic evidence. *E.g., Buckley Bros. Motors v. Gran Prix Imports,* 633 P.2d 1081, 1083 (Colo.1981). On the other hand, "written documents containing ambiguities or unclear language must be construed in accordance with the intent of the parties, and relevant extraneous evidence may be considered to resolve

Whether the court of appeals erred in affirming dismissal of the action where the complaint sufficiently alleged an employment agreement and breach thereof.
Whether the court of appeals erred in not determining that Mr. Dorman had sufficiently alleged a claim of good faith and fair dealing as part of his employment agreement with respondent.

the factual question of the parties' intent." *Chambliss/Jenkins Assocs. v. Forster*, 650 P.2d 1315, 1318 (Colo.App.1982); *accord, e.g., Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo.1990); *Hammond v. Caton*, 121 Colo. 7, 12–13, 212 P.2d 845, 847 (1949).[3] Therefore, the only issue before us is whether Dorman's complaint and the attached employment contract between Dorman and Petrol Aspen could support a claim that Dorman's employment relationship with Petrol Aspen either was for a definite term extending beyond the date his employment was terminated or was ambiguous as to the employment term. In evaluating these possibilities, we must view the complaint and the employment contract in the light most favorable to Dorman and must accept all of the material allegations in Dorman's complaint as true regarding alleged negotiations surrounding the formation of the contract. We express no opinion as to the substantive merits of Dorman's case.

Dorman contends that the employment relationship was for a definite term, and alternatively that at minimum the employment contract was ambiguous regarding the term of employment. Petrol Aspen responds that the employment contract established an at will employment relationship. Of course, "[t]he mere fact that the parties differ on their interpretations of an instrument does not of itself create an ambiguity." *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo.1990). "Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law," and this court need not defer to the trial court's interpretation. *Id.* In determining whether a contractual provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used," with reference to all of the agreement's provisions, and a provision is ambiguous "if it is fairly susceptible to more than one interpretation." *Id.; accord, e.g., Cheyenne Mountain Sch. Dist. v. Thomp-*

*son*, 861 P.2d 711, 715 (Colo.1993). Lastly, "[o]nce a contract is determined to be ambiguous, the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues." *Union Rural Elec. Ass'n v. Public Utils. Comm'n*, 661 P.2d 247, 251 n. 5 (Colo. 1983); *accord, e.g., Cheyenne Mountain*, 861 P.2d at 715.

## IV.

The language of the employment contract between Dorman and Petrol Aspen is fairly susceptible to more than one interpretation regarding Dorman's term of employment. Although the contract between Dorman and Petrol Aspen does not expressly identify a term of employment, the contractual provisions relating to the term of Dorman's employment are at minimum ambiguous. Specifically, the employment agreement's (1) stock option provisions, (2) listed series of salaries applicable to specific years, and (3) other references to Dorman's long-term status as a Petrol Aspen employee create ambiguities regarding the intended term of Dorman's employment. Consequently, Dorman must be afforded the opportunity to present to a fact-finder extrinsic evidence of the parties' intentions concerning the term of the employment contract, *see, e.g., Kuta*, 799 P.2d at 382; *Hammond*, 121 Colo. at 12–13, 212 P.2d at 847; *Chambliss/Jenkins*, 650 P.2d at 1318, including any evidence supporting Dorman's assertion that oral negotiations supplemented or expanded upon the written contractual terms.

### A.

First, the contract guaranteed Dorman the right to purchase stock in Petrol Aspen in 1994, indicating either that the employment relationship would last at least through January 1, 1994, or that Dorman's 1994 stock option was not subject to his continued status as an employee. The contract guaranteed that "[Dorman] *will have the right* to purchase 5% of the stock at $15,000.00," even though "[t]he only time that stock may be

---

3. Furthermore, any uncertainty in a contract prepared exclusively by the employer must be construed against the employer. *E.g., Kuta v.* *Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo. 1990).

purchased will be between January 1, 1994, and January 1, 1995, unless we renegotiate the situation."[4] (Emphasis added.) Assuming for our purposes today, but without deciding, that the stock options were a perquisite contingent upon Dorman's status as a Petrol Aspen employee, this provision references Dorman's continued employment at least through January 1, 1994, and creates an ambiguity as to the term of his employment contract.

### B.

Second, there are compensation provisions in the employment contract between Dorman and Petrol Aspen that create ambiguities regarding Dorman's employment term. Dorman's contract contained a specific outline of his compensation terms through 1993:

1. Hourly basis during August, 1991, at $12.00 per hour.

2. $1,500.00 for September, 1991. One half month school in Chicago.

3. $3,600.00 per month for October, November, December, 1991.

4. $42,000.00 per year for the years 1992 and 1993.

5. Beyond 1991, we will negotiate at the time for salary.

The court of appeals, relying on *Justice*, 35 Colo.App. at 4, 530 P.2d at 985, concluded that "a commitment on the duration of employment cannot be inferred from a contract provision fixing the rate of compensation during a given year.... [T]he same rule applies when an employment contract provides that the rate of compensation will be fixed during a series of years and then subject to modification." *Dorman*, slip op. at 3.

However, the court of appeals misconstrued *Justice*. *See Dorman*, slip op. at 2–3. *Justice* involved a contract describing " 'a starting annual salary of $12,000 per year,' " without any reference to specific years of employment. 35 Colo.App. at 3, 530 P.2d at 985. Furthermore, *Justice* concerned an employment contract that required the employee to reimburse the employer for payments made by the employer for the employee's travel and moving expenses if the employee resigned for any reason within a year, evidencing the parties' mutual intention that the employment relationship was terminable at will and was not subject to a definite term of one year. *Id.* Finally, *Justice* does not establish a bright line rule that " 'a contract which sets forth an annual salary rate but states no definite term of employment is considered to be indefinite employment, terminable at the will of either party without incurring liability for breach of contract.' " *Dorman*, slip·op. at 2–3 (quoting *Justice*, 35 Colo.App. at 4, 530 P.2d at 985). The sentence containing that quoted language begins with the phrase "Unless the circumstances indicate otherwise...." *Justice*, 35 Colo. App. at 4, 530 P.2d at 985; *accord Dorman*, slip op. at 2. The court of appeals determined that nothing in the written employment contract "commit[ed] either party to a fixed term of employment" but then went on to inquire "whether the evidence or circumstances established that both parties understood the contract to be for a term of one year." *Id.* at 4, 530 P.2d at 986. The court referred to the "uncontradicted testimony by both parties that a one year term was never considered or intended" to arrive at its conclusion that "the contract was for an indefinite term and therefore terminable at will at any time by either party." *Id. Justice* therefore is supportive of the admissibility of extrinsic evidence to determine whether a contract of employment is for a definite term when an annual rate of compensation is specified but the term remains undefined. *See also Bauer v. Goldman*, 45 Colo. 163, 164, 166–67, 100 P. 435, 435–36 (1909) (in reviewing a contract for ambiguity after trial, this court references "a conversation with defendant in Denver in which the terms of the contract were discussed" and "plaintiff's own testimony" in supporting our conclusion of absence of ambiguity); *Kansas Pac. Ry. v. Roberson*, 3 Colo. 142, 143–44, 146 (1876) (this court reviews contract for ambiguity after trial, but finds no indication of ambiguity "[i]n all that took place between the par-

4. The contract contained a clause requiring renegotiation regarding Dorman's salary "[b]eyond 1991," after specifying a yearly salary for 1992 and 1993.

ties and the circumstances under which they acted").

The letter agreement, drafted by Petrol Aspen, is fairly susceptible to the interpretation that Petrol Aspen was offering Dorman employment at least through January 1, 1994, based upon the compensation terms outlined in the employment contract and the stock option terms as previously discussed, *supra* part IV(A). However, Dorman has no obligation to prove a definite term of employment in order to survive this C.R.C.P. 12(b)(5) motion to dismiss, and must show only that the contractual terms are ambiguous. Again, even assuming that these contractual terms may be subject to differing interpretations, the provisions are at minimum ambiguous.

Cases decided by other courts support our conclusion that the contractual provisions concerning compensation, coupled with the stock option, make the agreement ambiguous. For example, in *Lloyd v. Grynberg*, the United States Court of Appeals for the Tenth Circuit applied Colorado law to a dispute concerning an employment contract that provided for a monthly compensation rate and a future share of corporate ownership, and that expressed an understanding that "we should be able to get the company going within a two-year period." 464 F.2d 622, 623 n. 1 (10th Cir.1972). The trial court had received "oral evidence of the surrounding facts and circumstances of the execution of the contract ... to give the jury a basis from which to determine the intention of the parties as to the period of time plaintiff would be employed by the defendant." *Id.* at 625. The jury returned an award based upon a two year employment term. *Id.* at 624. On appeal, the Tenth Circuit stated that "[i]t may be conceded that the term of the employment is not set out as clearly as it might have been. From a legal standpoint, it lacks only a clarification as to this ambiguity in order to make it a plain, complete and binding contract. The jury, with appropriate instructions from the court, resolved any question as to the term of employment intended by the parties." *Id.*

Similarly, in *Garrett v. American Treaty Brokers, Inc.*, No. 91C3643, 1993 WL 420933,

1993 U.S. Dist. LEXIS 14653 (N.D.Ill. Oct. 15, 1993), the plaintiff employee alleged a breach of a fixed term employment contract based on premature discharge while the defendant employer contended that the contract was terminable at will. The contract was based in part on the employee's request for an annual salary of $87,500, followed by the employer's acceptance with the qualification that the salary would be paid in biweekly installments. *Id.* at *1, 1993 U.S. Dist. LEXIS 14653 at *1–*2. Both parties moved for summary judgment. *Id.* at *1, 1993 U.S. Dist. LEXIS 14653 at *2. The court found the contract ambiguous as to whether it was terminable at will and denied both motions. *Id.* at *5, 1993 U.S. Dist. LEXIS 14655 at *14. In discussing the effect of the compensation terms, the court stated that "[o]ne could interpret [the employer's] reference to the first twelve months of employment as calculating the compensation based on a given salary rather than as specifying a particular yearly salary or guaranteed compensation. Therefore, the Court finds that the language [the employee] refers to creates a genuine issue of material fact which a trier of fact could construe as creating either an employment contract for a fixed term or one that is terminable at will." *Id.* at *3, 1993 U.S. Dist. LEXIS 14653 at *9.

Again, in *Lee v. Great Empire Broadcasting, Inc.*, 794 P.2d 1032 (Colo.App.1989), the Colorado Court of Appeals reversed a judgment awarded to a plaintiff employee based on breach of an employment agreement by the defendant employer. The oral contract, memorialized by written notes, reflected a March 27, 1986, starting date and provided that there was to be a guarantee of $4500 per month through September 1986. *Id.* at 1033. Among other grounds for reversal, the court of appeals held that the trial court erred in refusing to let a jury determine whether employment was for a definite term or at will. *Id.* at 1035–36. The court held that the contract could be interpreted as providing a guarantee of employment through September, 1986, therefore specifying employment for a definite term, or on the other hand, as merely establishing the employee's rate of compensation as long as the relationship con-

tinued. *Id.* Because the contract was ambiguous, the duration of employment should have been determined as a question of fact by a properly instructed jury. *Id.* at 1036.

Finally, in *Rosen v. Gulf Shores, Inc.*, 610 So.2d 366 (Miss.1992), an employee appealed from a summary judgment in favor of the employer on claims including wrongful discharge. The employment contract provided for an annual salary, allowed the employee to live in a company house of the employer until a date approximately one year from the beginning of employment, and expressed the employer's dependence on the employee to generate a specified amount of new business in a year's time. *Id.* at 367. The employee was required to move from California to Mississippi to undertake the employment. *Id.* He was discharged about three months after commencing work. *Id.* In reversing summary judgment for the employer, the court noted that Mississippi follows "the common law rule that a contract of employment for an indefinite amount of time may be terminated at the will of either contracting party." *Id.* at 368. It also observed that "many jurisdictions recognize the principle that a hiring at a specific sum per week, month or year is no more than an indefinite hiring," but stated that the employee was relying upon the annual salary provision in addition to other references to a definite term. *Id.* at 368–69.[5]

### C.

Lastly, the contract implied that the employment relationship was not terminable at will because Petrol Aspen expected Dorman's long-term participation as an employee. Petrol Aspen dated the contract August 2, 1991. In that contract, Petrol Aspen represented (1) that Dorman would have "input" into "long range planning," (2) that Petrol Aspen "hope[d] [Dorman] might attend an August 5, 1991, seminar in Glenwood Springs and a two week school during December, 1991, in Chicago," (3) that Dorman should expect that "reading, thinking and an awareness of full service gas stations is the most we will accomplish before October 1, 1991," (4) that the "first few months" would require a large effort by Dorman, and (5) that a vehicle would be available for Dorman's transportation "[s]ometime shortly after October 1, 1991." These contractual provisions, together with the stock purchase and compensation provisions previously discussed, *supra* parts IV(A), (B), are fairly susceptible to an interpretation that the parties intended long-term employment, at least through January 1, 1994, and that the employment relationship between Dorman and Petrol Aspen therefore was not terminable at the will of Petrol Aspen. At minimum, these contractual provisions create an ambiguity as to Dorman's status as an at will employee.

### V.

The contract between Dorman and Petrol Aspen contains ambiguities regarding Dorman's term of employment. In view of these ambiguities, Dorman should be permitted to introduce extrinsic evidence of the parties' intent concerning that term of employment. *Kuta*, 799 P.2d at 382; *Hammond*, 121 Colo. at 12–13, 212 P.2d at 847; *Chambliss/Jenkins*, 650 P.2d at 1318. Although a purpose of a C.R.C.P. 12(b)(5) motion is to permit early dismissal of meritless claims, claims that may have merit if ambiguities are resolved in favor of the claimant should be presented to a fact-finder for reso-

---

5. *See also Grisham v. Lee*, 61 Kan. 533, 60 P. 312, 313 (1900) ("[T]he court left it to the jury to determine whether it was a continuous and entire contract, or whether it was a hiring from year to year.... [T]hese were doubtful and disputed facts, and were therefore properly left for the determination of the jury."); *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 65 (Miss. 1988) ("[Employee] has made out a genuine issue of material fact on the matter of the existence *vel non* of a one year oral contract of employment. This being the case, the Circuit Court erred when it held, as a matter of law, that [employee's] employment contract was not for a fixed term."); *Resener v. Watts, Ritter & Co.*, 73 W.Va. 342, 80 S.E. 839, 839–40 (1913) ("In the latter part of 1907, [employee] entered the employment of [employer] ... upon an agreement for a monthly salary and expenses, and the further compensation of 5 per cent. [sic] commissions ... to be ascertained and paid on settlements made at the end of each year. No definite duration was fixed for the employment.... [I]t was a question for the jury to say, by its verdict, under the instructions clearly presenting the theories of the parties, whether the contract required a year's service....").

lution. The motion to dismiss should have been denied and Dorman should have been permitted to present his case on the merits. In view of our resolution of the ambiguity question, *supra* part IV, we do not address and express no opinion concerning Dorman's claims regarding promissory estoppel and Petrol Aspen's breach of an alleged duty of good faith and fair dealing. The judgment of the court of appeals is reversed, and this case is returned to that court with directions to remand to the trial court for proceedings consistent with this opinion.

ERICKSON, J., dissents, and VOLLACK, C.J., and KOURLIS, J., join in the dissent.

APPENDIX A

Aspen Petro, Inc.

C/O Christopher H. Smith

P.O. Box 130

Snowmass, Colorado 81654

303–927–4744

August 2, 1991

Mr. Ben Dorman

5353 County Road 100

Carbondale, Colorado 81623

Dear Ben:

I have to tell you that I have had the flu all day. I wanted to have this letter to you before the weekend, but ended up a little short on time.

We are offering you the job of General Manager for the Airport Amoco. This will entail responsibility for all aspects of the operation common to a General Manager, i.e., staffing, bookkeeping, customer relations, supplier relations, product acquisition, and facility maintenance. The partners in the business will b[sic] involved in establishment of assistance, long range planning, design, and all lease arrangements with John McBride and Amoco. Naturally, you will have input into these areas.

Our corporation, Aspen Petro, Inc., has stated objectives that include modernization and upgrade of the facility, systems and market-ing plans. It will be our intention to use profits to reduce debt and to capitalize improvements. It is our view, excepting unforeseen conditions, that the operation is a long-term proposition being held to generate profit from our efforts and skill. There is no intention to "slip it." All this shall be so stated in our Shareholders' Agreement.

In regards to timing, October 1, 1991, is the anticipated closing date. We will take over actual operations at that time. The facility and books are open to us at this time. I would hope you might attend an August 5, 1991, seminar in Glenwood Springs and a two week school during December, 1991, in Chicago. Other than that, I imagine reading, thinking and an awareness of full service gas stations is the most we will accomplish before October 1, 1991. I realize that you have commitments. Once you have discussed this with Andy, we will be better able to schedule.

As for compensation for your efforts, we are willing to pay you money and give you a future right to purchase stock at today's basis. I am suggesting the following:

1. Hourly basis during August, 1991, at $12.00 per hour.
2. $1,500.00 for September, 1991. One half month school in Chicago.
3. $3,600.00 per month for October, November, December, 1991.
4. $42,000.00 per year for the years 1992 and 1993.
5. Beyond 1991, we will negotiate at the time for salary.
6. The only time that stock may be purchased will be between January 1, 1994, and January 1, 1995, unless we renegotiate the situation. You will have the right to purchase 5% of the stock at $15,000.00.
7. Sometime shortly after October 1, 1991, we will acquire a wrecker and another vehicle. The additional vehicle will be for your transportation and will be available for station use. .

Your time commitment will have more to do with how you manage the facility than anything I can say. Obviously, however, the first few months will require a large effort from both of us. As we mentioned the other

evening I will be the "Title Managing Partner" initially. I am committed to this being very successful.

We have included no other benefits because I am suspicious of the value of group or individual benefits. We have also done this for the sake of simplicity.

I think this will be a challenging profitable opportunity for yourself and our group. Please consider this offer over the weekend. I will call you from my travels on Monday or Tuesday. I am sorry for the brevity, but I have not been downstairs today.

Yours truly,

ASPEN PETRO, INC.

[Personalized signature]

Christopher H. Smith

CHS/bl

Justice ERICKSON dissenting:

We granted certiorari to review the unpublished opinion of the court of appeals in *Dorman v. Petrol Aspen, Inc.*, No. 93CA1714 (Colo.App. Dec. 15, 1994), in which the court of appeals affirmed the summary dismissal of Ben M. Dorman's complaint against Petrol Aspen, Inc., for failure to state a claim upon which relief could be granted. The majority here reverses that decision and returns this case to the court of appeals with directions to remand to the trial court for further proceedings. In so doing, the majority concludes: (1) that extrinsic evidence is necessarily admissible to determine whether an employment contract is for a definite term when the contract specifies an annual rate of compensation but does not define the term of employment, *see* maj. op. at 913–914; and (2) that the employment contract between Dorman and Petrol Aspen is ambiguous in its terms, *see* maj. op. at 913. I cannot agree with either conclusion. Rather, I conclude that, to determine whether a contract is ambiguous upon a motion to dismiss, extrinsic evidence should be used for only a limited purpose and is not necessary in this case. I also conclude that the contract at issue here unambiguously established an employment contract which was terminable at the will of either party. Accordingly, I dissent.

## I

The majority discusses what evidence the court should consider in determining whether a contract is ambiguous. However, the majority fails to distinguish between the extrinsic evidence which is conditionally admissible to aid the court's determination of *whether* a contract is ambiguous and the extrinsic evidence which is admissible to assist the factfinder's interpretation of the contract once the court has determined that the contract is ambiguous.

The majority cites three cases in support of its proposition that the court should consider extrinsic evidence in determining whether a contract is ambiguous: *Bauer v. Goldman*, 45 Colo. 163, 164, 166–67, 100 P. 435, 435–36 (1909); *Kansas Pac. Ry. v. Roberson*, 3 Colo. 142, 143–44, 146 (1876); *Justice v. Stanley Aviation Corp.*, 35 Colo.App. 1, 4, 530 P.2d 984, 985 (1974), *cert. denied*, No. C621 (Colo. Feb. 3, 1975). This court reviewed each of the first two cases after trial, not, as here, on review of the trial court's grant of a motion to dismiss. The court of appeals in *Justice* likewise reviewed that case after trial on the merits.

In *Bauer*, 45 Colo. 163, 100 P. 435, the contract at issue was evidenced by a series of letters and telegrams. The trial court there allowed the plaintiff to testify as to "a conversation with defendant in Denver in which the terms of the contract were discussed" before "the employment was consummated." *Id.* at 164, 100 P. at 435. However, this court held that "this conversation, as testified to by her, in no wise changes the force and effect of the engagement as they appear in the letters and telegram in evidence." *Id.* This court further concluded that the trial court should have determined the effect of the contract, rather than submitting the question to the jury. The trial court also admitted the "plaintiff's own testimony" as to trade custom, and this court did not dispute that ruling. *Id.* at 167, 100 P. at 436. However, at the time *Bauer* was decided, the doctrine of employment at will was just coming into being, and "American courts generally adopted the English rule that the custom in a particular trade would determine the

duration of employment." *See* Charles G. Bakaly, Jr. & Joel M. Grossman, The Modern Law of Employment Relationships, § 1.5, at 10 (2d ed. 1989). Thus, the admission of plaintiff's testimony as to that custom was perfectly appropriate.

Likewise, in *Roberson*, 3 Colo. 142, the contract at issue was not evidenced by a single written document but, rather, consisted of various questions and answers contained in correspondence between the parties. *Id.* at 143–44. This court stated that "no usage or custom was shown respecting the employment . . ., and without it a general hiring cannot be regarded as a contract for a year's service." *Id.* at 146.

This court has specifically stated that, "in deciding *whether* a contract is ambiguous, a court 'may consider extrinsic evidence bearing upon the meaning of the written terms, such as evidence of local usage and of the circumstances surrounding the making of the contract.'" *Cheyenne Mountain Sch.*, 861 P.2d at 715 (quoting *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769, 777 (Colo.) (citations omitted), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985)) (emphasis added). More specifically, "to put the court in the same position as the parties, the circumstances under which the contract was made should always be admissible *so far as they tend to show the local meaning of the language of the contract,* whether or not that language is ambiguous if judged by the normal or ordinary meaning of the words." 4 Samuel Williston, A Treatise on the Law of Contracts, § 629 at 918 (1961) (emphasis added); *see Cheyenne Mountain Sch.*, 861 P.2d at 715; Williston, *supra,* § 601 at 311. In determining whether a contract is ambiguous, the use of extrinsic evidence should be limited to these purposes.

The conditional admission of extrinsic evidence does not convert the question of whether the contract is ambiguous into a question of fact for the jury, *see* Williston, *supra,* § 601 at 311, nor is the conditional admission of extrinsic evidence required in every instance. Further, in determining *whether* a contract is ambiguous, "the court may not consider the parties' own extrinsic expressions of intent." *Cheyenne Mountain Sch.*, 861 P.2d at 715 (citation and internal quotation marks omitted) (dictum). To the extent that *Justice* holds otherwise, 35 Colo. App. at 4, 530 P.2d at 986, it conflicts with *Cheyenne Mountain School District* and should not be followed by this court.[1]

Neither party disputes that the employment offer letter, reproduced in Appendix A to the majority opinion, set forth the terms of Dorman's employment. Neither party contends that the trade custom or surrounding circumstances would vary the ordinary meaning of the contractual terms. Rather, Dorman bases his argument of contractual ambiguity on the terms of the contract, as written, and contends that the court should submit those terms to the jury to determine their force.[2] I disagree with Dorman's argument and conclude that no extrinsic evidence is necessary to construe the contract's terms.

## II

We "must enforce an unambiguous contract in accordance with its terms," *Griffin v. United Bank*, 198 Colo. 239, 242, 599 P.2d 866, 868 (1979), and without reference to extrinsic evidence. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990). The construction of unambiguous contractual language is a question of law. *Union Rural Elec. Ass'n v. Public Utils. Comm'n*, 661 P.2d 247, 251 (Colo.1983). Whether an ambiguity exists is also a question of law. *Fibreglas Fabricators*, 799 P.2d at 374. This court need not defer to the district court's construction of unambiguous

---

1. Once the court has determined that the contract is ambiguous, the interpretation of the contract becomes a question of fact, and the trial court may admit parol evidence to aid in its interpretation. *Cheyenne Mountain Sch.*, 861 P.2d at 715. However, even then, "[a] court should use parol evidence only when the agreement is so ambiguous that the intent of the parties is not clear." *Id.*

2. Dorman does argue that a representative of Petrol Aspen made "verbal assurances of fair treatment" which establish the formulation of an implied covenant of good faith and fair dealing. However, parol evidence is admissible only in limited circumstances, *see supra* note 1, and should not be used to create ambiguity.

contractual language or to its finding of contractual ambiguity. *Id.* However, once a contract is adjudged ambiguous, the meaning of the ambiguous term is a question of fact to be determined and reviewed in the same manner and with the same deference as other questions of fact. *Union Rural Elec.*, 661 P.2d at 251 n. 5.

A contractual provision is ambiguous when it is fairly susceptible of multiple interpretations. *Fibreglas Fabricators,* 799 P.2d at 374. In determining whether a provision is ambiguous, we must construe the language in accordance with its generally accepted meaning and refer to all of the contract's provisions. *Id.* We must also consider the subject matter of the contract. *Cheyenne Mountain Sch.*, 861 P.2d at 715.

### III

Dorman's contract did not expressly identify a term of employment. Thus, the court should determine whether a term of employment may be unambiguously implied from the context of the offer letter or whether the letter's terms are sufficiently ambiguous to require the admission of extrinsic evidence. Dorman here contends that Smith's letter unambiguously created a contract for term employment or that, alternatively, the letter was ambiguous as to the intended duration of Dorman's employment with Petrol Aspen because the letter: (1) did not specify a term of employment; (2) stated that "the operation is a long-term proposition;" (3) proposed a definite salary through 1993; (4) offered Dorman a stock purchase option in 1994; and (5) contained a renegotiation clause. I conclude that the letter's provisions were unambiguous and, upon Dorman's acceptance, created a contract for employment at will.

Silence in a contract as to a particular matter does not create ambiguity as a matter of law unless that matter naturally falls within the scope of the contract. *Cheyenne Mountain Sch.* 861 P.2d at 715. Dorman argues that his contract is ambiguous because it does not specify a term of employment and because the duration of employment is a matter naturally within the scope of an employment contract. However, an employee who is hired in Colorado for an indefinite period of time is presumptively an at will employee who may be terminated without cause or notice at any time and without legal recourse. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987). In the absence of an express or implied term of employment, the presumption of at will employment determines the nature and terminability of the employment relationship.

The majority states that "the contract implied that the employment relationship was not terminable at will because Petrol Aspen expected Dorman's long-term participation as an employee." Maj. op. at 915. However, the letter stated that "excepting unforeseen conditions, ... the *operation* is a long-term proposition." (Emphasis added.) This statement was contained in a paragraph which addressed Petrol Aspen's objectives as an entity but did not mention in any way the relationship between Petrol Aspen and Dorman. *See* Appendix A. The statement specifically referred only to the operation of the corporation, not to the proposition of employment, and made no guarantees or promises as to the duration of either the corporation or of Dorman's employment. Even a contract which envisions "permanent" employment, absent special consideration or an express term of employment, does not establish anything "more than an indefinite, general hiring terminable at the will of either party." *See Justice,* 35 Colo.App. at 5, 530 P.2d at 986.[3]

The compensation provisions of Dorman's contract are not ambiguous and do not create an employment contract for a definite term. The offer letter suggested a salary of $42,000 per year for the years 1992 and 1993, subject to renegotiation as discussed below. Provision in an employment contract for a set amount of compensation per time period does not simultaneously set the term of employ-

---

3. The majority details five contractual provisions which it contends establish Petrol Aspen's anticipation of Dorman's "long-term participation as an employee." Maj. op. at 915. Four of the five were to have occurred before January 1992,

when Petrol Aspen terminated Dorman's employment. The remaining provision indicated that Dorman would have input into "long range planning." This provision is inadequate to establish a definite term of employment.

ment at that length of time. *Justice*, 35 Colo.App. at 3–4, 530 P.2d at 985. Otherwise, an at will employment contract which specified a salary of $7.50 per hour would be converted into a contract for a definite term of one hour. Dorman concedes that, under the terms of the letter, his salary level for 1992 and 1993 was not definite, but was subject to renegotiation "at the time." The letter set forth a proposal for the *amount* of compensation Dorman would receive if he remained in the employ of Petrol Aspen for two years. However, the letter proposed only compensation, not duration of employment, and created neither a contract for a definite term nor an ambiguity as to the nature of the employment relationship. Petrol Aspen did not guarantee Dorman a set amount for a period of years, and Dorman should not now be allowed to claim that it did. *Cf. Lee v. Great Empire Broadcasting, Inc.*, 794 P.2d 1032, 1035–36 (Colo.App.1989) (holding that a written "guarantee" of a certain amount for a certain time created an ambiguity as to whether the contract was at will or for a definite term).[4]

Likewise, contrary to the majority's conclusion, the contractual provision for Dorman's option to purchase stock in January 1994 created neither a contract for a fixed term nor contractual ambiguity. The stock option was contained in a list of seven compensation "suggestions" and constituted a form of deferred compensation. *See Commissioner v. LoBue*, 351 U.S. 243, 248–49, 76 S.Ct. 800, 803–04, 100 L.Ed. 1142 (1956) (holding that employee received taxable income when he exercised a non-transferable

stock option). The stock option would have served as inducement for Dorman, as an at will employee, to remain in Petrol Aspen's employ, and his continued employment would have constituted adequate consideration for the additional compensation. *See Olsen v. Bondurant & Co.*, 759 P.2d 861, 864 (Colo. App.1988). At most, the existence of the stock option "would give rise to a duty of good faith on the part of [Petrol Aspen] not to terminate the employment or otherwise frustrate the exercise of the options *for that purpose or reason.*" *See Harrison v. Jack Eckerd Corp.*, 342 F.Supp. 348, 350 (M.D.Fla.), *aff'd without opinion*, 468 F.2d 951 (5th Cir.1972); *see also Haney v. Laub*, 312 A.2d 330, 334 (Del.Super.Ct.1973) (agreeing with *Harrison* and holding that stock options alter the employment relationship where options expressly provide that the options are terminable only upon dismissal for cause).

Although a renegotiation clause may create contractual ambiguity in some circumstances, it does not do so here. Contractual ambiguity may exist where an employment contract provides for renegotiation of salary after "yearly" performance reviews; provides for a "yearly" salary; and envisions "a long term commitment toward each other." *See Williams v. Computer Resources, Inc.*, 123 Idaho 671, 851 P.2d 967, 969 (1993) (internal quotation marks omitted). However, the renegotiation clause in this case does not create an ambiguity as to the nature of Dorman's employment. The offer letter "suggest[ed]" annual salary terms while simultaneously

---

4. The majority cites *Lloyd v. Grynberg*, 464 F.2d 622 (10th Cir.1972) in support of its conclusion that Dorman's employment contract is ambiguous. *Lloyd* is inapposite. *Lloyd* involved an appeal after a judgment from a jury verdict. *Id.* at 623. In *Lloyd*, the court held that the contract was ambiguous and then considered parol evidence offered to the jury. *Id.* at 624. The court noted as important the submission of "appropriate and adequate jury instructions." *Id.* However, these instructions are erroneous under current Colorado law because they allowed the jury to determine whether the contract was ambiguous, *id.* at 625; in Colorado, the determination of ambiguity is a question of law for the court. *Fibreglas Fabricators*, 799 P.2d at 374.

The majority also cites *Rosen v. Gulf Shores, Inc.*, 610 So.2d 366 (Miss.1992), which is like-

wise inapposite. In *Rosen*, the court treated the employer's motion for dismissal as a motion for summary judgment. *Id.* In reversing the trial court's grant of the motion, the Supreme Court of Mississippi relied, in part, on the doctrine of "additional consideration." *Id.* at 369–70. Under that doctrine, a court may look to the employee's detrimental reliance on a writing to determine whether an enforceable contract has been formed. *Id.* at 369. In *Rosen*, the court noted that "a man who is enticed to move 1000 miles on promises of an annual salary, free housing for a year, and a job measured by the amount of sales he can produce in a years time" should have a cause of action. Both *Rosen* and the doctrine of additional consideration are inapplicable in this case.

providing that, beyond Dorman's initial six months of employment, the parties would "negotiate at the time for salary." [5] Unlike *Williams,* in this case: (1) the renegotiation clause was not accompanied with assurances of a "long term commitment *toward each other,*" *see Williams,* 851 P.2d at 969 (emphasis added), but, rather, assured only "that the *operation* is a long-term proposition," (emphasis added); and (2) the offer letter did not provide for a specific yearly salary but, rather, merely suggested annual salary terms which would be subject to renegotiation at the beginning of the period in which Dorman would have received the proposed salary. *See Williams,* 851 P.2d at 969.

The alleged ambiguities in the offer letter neither singularly nor collectively create ambiguity in the contract, and the contract provides for at will employment. As such, Dorman should not be allowed to introduce extrinsic evidence to vary the terms of the contract. *See Cheyenne Mountain Sch.,* 861 P.2d at 715.

### IV

Today, in Colorado, a general hiring is presumed to be a hiring for employment at will, unless the employee establishes an exception to the terminability of that contract. *See Keenan,* 731 P.2d at 711–12 (stating that the "presumption of 'at will' employment" may be rebutted); *Schur v. Storage Tech. Corp.,* 878 P.2d 51, 53 (Colo.App.1994), *cert. denied,* No. 94SC185 (Colo. Aug. 8, 1994) (stating that the *Keenan* presumption is substantive, not merely evidentiary). Dorman argues that, even if his employment contract is terminable at will, both an express and an implied covenant of good faith and fair dealing except his contract from that terminability. Because I conclude that Dorman's contract is terminable at the will of either party, I also conclude that the majority errs in refusing to consider whether Dorman has

established an exception to that terminability.

Accordingly, I respectfully dissent.

VOLLACK , C.J., and KOURLIS, J., join in this dissent.

**5.** The court of appeals implicitly concluded that the contractual provision for salary negotiation mistakenly provided for negotiation in 1991 by setting forth the contractual salary negotiation clause as follows: "Beyond 1991[sic], we will negotiate at the time for salary." However, Dorman does not argue scrivener's error, *see* Dorman's Opening Brief at 10, and the court of appeals determination does not bind this court. *See Fibreglas Fabricators,* 799 P.2d at 374.