**PRESERVE AT THE FORT, LTD.,**
**a Colorado limited partnership,**
**Plaintiff–Appellant,**

v.

**PRUDENTIAL HUNTOON PAIGE ASSO-**
**CIATES, f/k/a WMF/Huntoon Paige As-**
**sociates, Limited, a Delaware corpora-**
**tion, Defendant–Appellee.**

No. 03CA0868.

Colorado Court of Appeals,
Division I.

Dec. 30, 2004.

Maguire & Rabun, LLC, Bruce H. Rabun, Greenwood Village, Colorado, for Plaintiff–Appellant.

Lowe, Fell & Skogg, LLC, Kenneth K. Skogg, Brandee L. Caswell, Denver, Colorado; Krooth & Altman LLP, Bonnie Hochman Rothell, Washington, D.C., for Defendant–Appellee.

Opinion by Judge MARQUEZ.

In this dispute over the interpretation of deed of trust notes and attached riders, plaintiff, Preserve at the Fort, Ltd., appeals a judgment in favor of defendant, Prudential Huntoon Paige Associates, denying plaintiff's claim for reimbursement of a prepayment charge. We affirm.

Plaintiff borrowed money from defendant to fund a mortgage loan for plaintiff's apartment project. In August 1994, plaintiff executed a deed of trust note with an attached rider in favor of defendant for the principal amount of $16,566,900. In December 1995, defendant loaned plaintiff an additional sum that was evidenced and secured by a supplemental deed of trust note with an attached rider. The notes were then consolidated by a separate agreement.

The notes provided in pertinent part:

*Notwithstanding any provision herein for a prepayment charge or premium, prepayments* of principal which do not exceed an aggregate of fifteen per centum (15%) of the original principal sum of this note in any one calendar year, *may be made* without any prepayment charge or premium. This paragraph is subject to the Rider attached hereto.

(Emphasis added.)

The riders attached to the deed of trust notes stated in relevant part:

*Notwithstanding anything in this Note to the contrary, this Note may not be prepaid,* in whole or in part, prior to the Fifth Anniversary of the scheduled date for completion of construction as set forth in the construction contract (September 25, 1995). *Thereafter this Note may be prepaid* on the last day of any month *in whole or in part* upon at least thirty (30) days' advance written notice to the Holder, which notice shall specify the date on which the prepayment is to be made, and *upon payment to the Holder as a prepayment premium* of an amount equal to the following percentages of the principal amount of this Note then being prepaid.

(Emphasis added.) This paragraph is followed by a schedule of the permissible prepayments and the percentage of prepayment premiums.

After the first note was executed, defendant entered into a participation and servicing agreement that transferred all its beneficial ownership interest in the loan to another corporation, but that corporation is not a party to this appeal.

In 2001, plaintiff refinanced the notes and was required to pay them off in full. Defendant sent a payoff statement that included a total payoff amount of principal and interest due and added a prepayment penalty of $678,201. Noting that the prepayment penalty included a four percent prepayment charge on the first fifteen percent of the original sum of the note, plaintiff's representative inquired about the propriety of a portion of the prepayment penalty in the amount of $104,185. However, plaintiff's loan closed without resolution of this inquiry, and plaintiff paid defendant the entire payoff amount.

Although plaintiff made written demand on defendant to return the $104,185, defendant refused to do so. Plaintiff filed this suit asserting claims for assumpsit for money had and received, restitution for payment of an illegal demand, unjust enrichment, breach of contract, and breach of quasi-contract and contract implied in law. Following a bench trial, the court entered findings of fact, conclusions of law, and judgment. It found against plaintiff for reimbursement relating to the prepayment charge, but in favor of plaintiff for an "insufficient notice fee." That fee is not at issue on appeal.

I.

Plaintiff contends that the rider language does not conflict with the language in the note prohibiting a prepayment charge on prepayments of up to fifteen percent of the original principal sum in any one calendar year. We agree with the trial court's interpretation of the rider language to the contrary.

Contract interpretation is a question of law that is reviewed de novo. The primary goal of contract interpretation is to determine and give effect to the intent of the parties, and that intent is to be determined primarily from the language of the instrument itself. *Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373 (Colo.2000).

To determine the intent of the parties, we view the contract in its entirety. If its meaning is clear and unambiguous, the contract is enforced as written. If, however, the contract is susceptible of more than one

reasonable interpretation, it is ambiguous, and its meaning must be determined as an issue of fact. *Bloom v. Nat'l Collegiate Athletic Ass'n,* 93 P.3d 621 (Colo.App.2004). The determination whether a contract is ambiguous is a question of law subject to de novo review. *Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909 (Colo.1996).

Here, the parties agreed that there was no ambiguity in the note and that the language in the note that appears to permit prepayment up to fifteen percent and the language in the rider that appears to bar any prepayment do not conflict and are not ambiguous. The court found that the rider controls, negates or supplants any language in the note that might permit prepayment, and bars prepayment except as provided in the rider.

Plaintiff argues that the "notwithstanding anything in this Note to the contrary" language in the rider applies only to the "lockout" provision of the rider and modifies and overrides the paragraph in the note providing a right to prepayment of fifteen percent of the original sum of the note without prepayment charges. It concedes that under this rider language, no prepayment of any kind may be made within the first five years of the loan.

Plaintiff, however, argues that the second sentence of the rider language, stating that prepayment is allowed after the first five years of the loan subject to the prepayment premium, does not address prepayment penalties on the repayment of the initial fifteen percent of the principal sum of the note. Plaintiff asserts that unlike the note and the first sentence of the rider, the second sentence does not contain the phrase "notwithstanding anything in this Note to the contrary." Therefore, plaintiff argues, the second sentence in the rider does not contradict or override the paragraph in the note prohibiting prepayment penalties on fifteen percent of the original sum of the loan. Given that the rider language is silent on the issue of prepayment penalties on fifteen percent of the original sum after five years, plaintiff asserts that the rider language does not modify the note's prohibition against prepayment penalties when

prepayments are finally allowed after five years. We reject this analysis.

The rider states that notwithstanding anything in the note to the contrary, the note may not be prepaid "in whole or in part" prior to the fifth anniversary of the scheduled date for completion of construction. It then states that thereafter, the note may be prepaid according to the schedule and the payment of certain prepayment premiums. Nothing in the language of the rider provides any exceptions of the nature suggested by plaintiff. In our view, use of the term "thereafter" means that the two sentences must be read together. Further, the note states that the paragraph prohibiting prepayment penalties on fifteen percent of the original sum is "subject to the Rider attached." Thus, the trial court correctly held that the rider negates or supplants any language in the note that might permit prepayment.

Because of our disposition, we do not address plaintiff's alternative argument that the contract is ambiguous and must be construed against defendant.

## II.

Plaintiff also contends that Housing and Urban Development (HUD) regulations prohibit imposition of a prepayment penalty on fifteen percent of the original sum of the loan prepaid in any one calendar year and the exception found in the regulations does not apply to the current facts. According to plaintiff, an interpretation of the rider language that would allow such a prepayment penalty would violate HUD regulations 24 C.F.R. §§ 200.87 and 207.14 and cannot be enforced. We disagree.

As relevant here, 24 C.F.R. § 200.87(a) and (b) (2004) states:

(a) Prepayment privilege. Except as provided in paragraph (c) of this section or otherwise established by the Commissioner the mortgage shall contain a provision permitting the mortgagor to prepay the mortgage in whole or in part upon any interest payment date, after giving the mortgagee 30 days' notice in writing in advance of its intention to so prepay.

(b) Prepayment charge. The mortgage may contain a provision for [a prepayment] charge, in the event of prepayment of principal, as may be agreed upon between the mortgagor and the mortgagee subject to the following:

(1) The mortgagor shall be permitted to prepay up to [fifteen] percent of the original principal amount of the mortgage in any one calendar year without any such charge.

However, 24 C.F.R. § 200.87(c) (2004) provides:

Where the mortgage is given to secure . . . a loan made by a lender that has obtained the funds for the loan by the issuance and sale of bonds or bond anticipation notes, or both, the mortgage may contain a prepayment restriction and prepayment penalty charge . . . .

In its reply brief, plaintiff argues that the previous 24 C.F.R. § 207.14 (1995), which was in effect when the two deed of trust notes were signed, is applicable. However, we see no significant difference in the language of that provision and the current § 200.87. Nor has plaintiff directed us to any.

At trial, defendant submitted HUD Handbook § 4430.1 Rev-1, 1–21(B)(4), Mortgagee Letter 87–9, and several other letters written by HUD, addressed to third parties with respect to other transactions, and clarifying the Mortgagee Letter.

Mortgagee Letter 87–9 provides in pertinent part:

B. *Mortgages funded with the proceeds of GNMA mortgage-backed securities or other bond obligations (as defined below) may include the following, so long as the conditions cited in Section II below are met:*

. . .

(3) a combination lock-out/penalty provision with a lock-out period of less than ten years and a penalty that would be no more than one percent at the end of the tenth year following the construction period stated in the construction contract. *Note:* For purposes of this Category B, *"other bond obligation"* refers to any agreement under which the insured mortgagee has obtained the mortgage funds from third party investors and has agreed in writing to repay such investors at a stated interest rate and in accordance with a fixed repayment schedule.

(Emphasis in original.)

A letter dated May 5, 1987, from the office of the assistant secretary for HUD to a party not related to these proceedings states in pertinent part:

With respect to your inquiry regarding the meaning of the term "other bond obligation," we wish to confirm that, in the context of Mortgagee Letter 87–9, the term does indeed include any participation agreement between a mortgagee and a third-party investor that provides for the pass-through of payments of principal and interest actually received by the mortgagee at a stated interest rate and on a fixed repayment schedule.

The trial court admitted these exhibits and specifically considered the Handbook and Mortgagee Letter 87–9 in interpreting the term "any other bond obligation" and in determining whether the rider language violated 24 C.F.R. § 200.87(b).

Defendant argues that the participation and servicing agreement is "an agreement whereby [defendant] has agreed to repay the investor at a stated rate and in accordance with a fixed repayment schedule." Plaintiff, however, contends that the language "in accordance with the fixed repayment schedule" makes defendant's arrangement with a third party outside the scope of any "other bond obligation." It argues that defendant had no obligation to repay third-party investors at a stated rate of interest and within a fixed repayment schedule. Consequently, plaintiff contends that the loan here had no "other bond obligation" sources for funding. We are not persuaded by plaintiff's contention.

The court rejected plaintiff's argument that the phrase "other bond obligation" as it relates to the Code of Federal Regulations means a bond "as we learned about in law school." The court noted that Mortgagee Letter 87–9 to all approved mortgagees states that "other bond obligation" refers to "*any* agreement under which the insured mortgagee has obtained the mortgage funds

from third party investors and has agreed in writing to repay such investors at a stated interest rate and in accordance with a fixed repayment schedule." *See also* HUD Handbook, 4430.1, Rev–1, 1–21(B)(4). The court held that "any agreement" covers the type of agreement entered into between the parties to this case. It found that defendant negotiated a loan with plaintiff, created a security with regard to the loan funds, received that money from a third-party investor in exchange for the security, and then proceeded to service the loan until it was paid. According to the court, that is precisely the type of transaction, or series of transactions, the letter contemplates because HUD approved this type of transaction.

We agree with the court's analysis and note that it is supported by the May 5, 1987 letter from the office of assistant secretary for HUD. To the extent they have the power to persuade, interpretations contained in HUD opinion letters are "entitled to respect." *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662–63, 146 L.Ed.2d 621 (2000)(Department of Labor opinion letter); *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)(rulings, interpretations and opinions of Administrator of Fair Labor Standards Act constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance); *Encarnacion Hernandez v. Prudential Mortgage Corp.*, 553 F.2d 241 (1st Cir.1977)(HUD mortgagee letter is a reasonable interpretation of handbook, regulations, and laws; citing *Thorpe v. Housing Auth.*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), which looked to letters written by HUD's assistant secretary for confirmation of intent of circular issued by HUD).

The participation and servicing agreement between defendant and the third party states that defendant "is required to remit to [the third party] all payments of principal, prepayment premiums, or penalties and interest on the Note." Additionally, repayment is required on a fixed schedule where defendant must pay the third party the money from plaintiff by the close of business on the twenty-fifth of each month. Because defendant,

as an insured mortgagee, obtained funds from a third-party investor and agreed to repay the investor in accordance with the participation and servicing agreement, the exception in 24 C.F.R. § 200.87(c) applies. Thus, the rider in the notes does not violate the applicable regulations.

The judgment is affirmed.

Judge CASEBOLT and Judge ROY concur.